Griffith, Appellant, *v.* V. A. Simrell & Son Co.

Argued April 13, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Frank A. McGuigan,* with him *Edward McGovern,* for appellant.—There was sufficient evidence produced by plaintiff on which the jury could base its verdict for plaintiff: Fuller v. Coal Co., 268 Pa. 328; Wiles v. Emerson-Brantingham Co., 267 Pa. 47; Simon v. Myers, 284 Pa. 3; Hunter v. Pope, 289 Pa. 560.

The jury have a right to find that the operator of the automobile was negligent in driving in the groove of wet tracks and in applying increased power when trying to turn out where this resulted in the automobile skidding across the street onto the sidewalk.

It is a well established rule that where the facts are in dispute, or more than one inference can be drawn therefrom, the issue whether or not the servant was acting for defendant and within the scope of his employment is for the jury and the surrounding facts and circumstances are to be considered by the jury in this in-

quiry: Petruska v. Motor Car Co., 83 Pa. Superior Ct. 112, 114; Parker v. Car Co., 241 Pa. 461; Zondler v. Supply Co., 277 Pa. 98; Blaker v. Electric Co., 60 Pa. Superior Ct. 56.

Failure to comply with the Motor Vehicle Act with referen' to transfer of title makes the sale illegal, unenforceable and void: Miles v. Zorzi, 88 Pa. Superior Ct. 231, 233; Brenner v. Pecarsky, 86 Pa. Superior Ct. 414.

*Richard B. Sheridan,* with him *Robert J. Doran,* for appellee.—The evidence showing how the accident happened, being the testimony of witnesses for plaintiff, the question of their credibility could not be submitted to the jury, because, by offering them, plaintiff gave them the stamp of credibility: Dunmore v. Padden, 262 Pa. 437; Krewson v. Sawyer, 266 Pa. 284.

Plaintiff's case is not helped by the fact that Bowie's foot slipped off the foot pedal and left the car off in second gear, and that this caused the impact that shoved the Chevrolet over the curb, nor by the argument that this occurrence in his effort to battle the tight situation confronting him, is the black spot that convicts Bowie of negligence, because, the most that can be predicated of the incident is that in his sincere attempt to avoid the disaster, unexpectedly confronting him, he let his foot slip, or inadvertently put his foot on the wrong pedal. But this would not be sufficient to predicate a finding of negligence on: Simpson v. Jones, 284 Pa. 596; Ferrell v. Solski, 278 Pa. 565.

We have not been able to find any case in Pennsylvania where recovery has been sustained in an automobile case where the only fact relied on to show negligence was that the machine skidded when traveling within the limit permitted by law.

Bowie was not engaged in his master's business within the scope of his employment: Scheel v. Shaw, 252 Pa. 451; Felski v. Zeidman, 281 Pa. 419.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1931:

By a divided court it was determined that the relation of master and servant did not exist between Bowie, the driver of the automobile which killed plaintiff's husband, and the defendant summoned in this action to respond in damages therefor, or, if that relation existed, the driver at the time was not engaged in his employer's business. Appellee not only affirms the correctness of these conclusions but advances the further argument that it was not shown that the driver of the car was in any wise negligent. Plaintiff recovered a verdict for $10,500, which the court in banc set aside, entering judgment for defendant.

We have no doubt as to the negligence of the driver of the car under the proofs as they were adduced. Plaintiff's decedent had drawn his automobile up alongside the curb on one of the main streets of the City of Pittston for the purpose of changing a tire. He was thus engaged, standing on the footwalk, when the car which was being driven by Bowie, a mechanic employed by defendant, a dealer in automobiles, swerved from the opposite side of the street, struck the standing car with much force, drove it up on the sidewalk, the deceased being pinioned between his car and a fence, with resulting injuries from which he died. A recital of these simple facts would quite convincingly show a negligent operation of the car. But, says the defendant, the evidence shows that Bowie was not driving at a rate in excess of that which was lawful and there is nothing to show that the speed was excessive under the circumstances. Irrespective of any question of speed, we think the presumption of negligence arises where it appears that the driver of an automobile permits his car to deflect from its course and to dash or skid across a highway and injure a person on the sidewalk: Wallace v. Keystone Automobile Co., 239 Pa. 110. The testimony shows that the street was wet and slippery and that the driver was endeavoring to get the car out of the street

car track. In so doing he was bound to take into account the slippery condition of the street and to reduce his speed to the point where he could control the movements of the car. Furthermore, Bowie's own testimony shows his want of care. He said he was driving about thirty miles an hour in the car track, "it was very slippery," the car started to skid and he put on the brakes to get out of the car tracks. "I shoved my both feet forward and I hit the shifting lever, it was in high speed and I hit it to throw it in neutral, I imagined it was in neutral and I got to this car parked on the other side of the street, my car was practically stopped before I hit it. When I left off the clutch, off this leg [he had but one good leg and he was pointing to his artificial one], I slipped off the foot pedal, and I put my good leg over on the foot pedal, and left it off in second gear which I didn't know at that time, car was running the motor very fast, and when the [other] car was struck just shoved [it] over the curb and up against the fence." It could not be said under these circumstances that the automobile was being operated with due care.

This is not such a case as Simpson v. Jones, 284 Pa. 596, cited by defendant. There the plaintiffs were guests in the defendant's automobile and the skidding of the car was due to something unknown and unexplained, while here it is manifest that the skidding was occasioned by the slippery condition of the roadway.

Having reached the conclusion, in agreement with the court below, that the driver of the automobile was negligent, we now come to the other questions decided by it adversely to plaintiff. Did the relation of master and servant exist between Bowie and defendant, and if so was he at the time of the accident engaged on his employer's business? In the majority opinion of the common pleas, it is concluded that the automobile belonged to Bowie and at the time of the accident he was engaged in its sale as his own affair. This position is taken largely because he had made two partial payments to

defendant on account of its purchase. When all the circumstances connected with the transaction of his partial payments are taken into account, we think the conclusion that it was his car is not so inescapable as to require its determination as a matter of law. Whether he was on his own or the defendant's business interweaves with the determination of whose car it was. The first status of the car, so far as defendant is concerned, is that it was a secondhand one purchased by it, stored on its premises awaiting an opportunity for sale. As before stated, Bowie was employed by defendant as a mechanic. He had taken a fancy to the car and wished to acquire it, and had entered into an arrangement with defendant that he could possess it by paying $500 for it and that he might make deposits with his employer on account of this price. He also had an understanding that he could make repairs on the car in his off time when not receiving pay from defendant. At the time of the accident he had deposited $60 on account of the price and had done certain repair work on the car.

In its affidavit of defense defendant admitted it was the owner of the car at the time of the accident. Plaintiff's statement of claim sets forth that defendant is a dealer in new and used automobiles and was the owner "of a National roadster automobile" on the day when her husband was killed; that on that date defendant by its agent and employee Bowie was operating "said" automobile in the City of Pittston and then goes on to aver that this named automobile was the cause of her husband's death. The affidavit of defense as to the allegation of ownership of a "National roadster" automobile admits it. It denies, however, that Bowie was defendant's agent and employee "operating *said* automobile" and avers that the use of the automobile was not within the scope of his employment. It is now argued that the admission of ownership of "a National roadster automobile" is not an admission of ownership of the car involved in the accident. When all the averments in the

statement of claim relative to the car are taken into account, no such hairsplitting distinction is available to defendant. We construe the pleadings as a formal admission by defendant of its ownership of the car which figured in the accident. All the testimony in the case indicates that it was, and shows that all that Bowie had done to acquire it was to make deposits with defendant on account of its purchase price, the purchase to be consummated when he had completed certain additional payments. He testified that he got possession of the car sometime previous to the accident as a result of informing Stanley Simrell, president of defendant, that he believed he could sell it in Pittston, where he lived, defendant's place of business being in Scranton, and that Simrell told him to go ahead and take it and he, Bowie, could have all he could get for it above $500; that he drove the car between Scranton and Pittston daily, keeping it in his garage at night; that it was always used with the defendant's license plates on it; that at the time of the accident he was demonstrating the car to one Stanton, a possible purchaser, who was seated alongside him, to whom he was going to sell it for $600; that he was on his way back to defendant's place of business at the time to make arrangements with Mr. Simrell, defendant's president, to close the sale. He testified categorically that he did not have any title to the car. Simrell himself testified that he had agreed to sell Bowie the car for $500, that to finance the payment Bowie was to pay $200 down, that when this amount was paid title would be conveyed to him and that he was permitted to work on the car in his off time, so it would be in good shape when he was ready to take it. Under the facts as they were shown, we are of opinion that the majority of the judges of the court below were in error in concluding, as they did as a matter of law, that the circumstance of the part payments made by Bowie is conclusive against plaintiff's contention that he was defendant's agent and that it held title to

the car for him and as security for the payment of the balance of the purchase price. In reaching this conclusion undue weight was given to the deposits made on account of the purchase price, and other facts and circumstances indicating Bowie's relation to the defendant were disregarded. We conclude that this question was for the jury.

In the case of Petruska v. Packard Motor Car Co., 83 Pa. Superior Ct. 112, the facts were closely analagous to those in the case at bar, and it was held that the question whether the servant was acting for his master in the course of his employment or within the scope of his authority, was for the jury to determine. See also Reed v. Bennett, 281 Pa. 332; Zondler v. Foster Mfg. & Supply Co., 277 Pa. 98.

Judge JONES, who wrote the dissenting opinion for the minority of the court below in which President Judge McLEAN joined, entertained the view that a new trial should be granted and that the question of whether Bowie was on the business of his employer at the time of the accident should be submitted to a jury under proper instructions. This disposition of the case meets with our approval.

The judgment is reversed, with directions to the court below to reinstate the motion for a new trial and to grant it.