## Mulheirn *v*. Brown et al., Appellants.

172

Argued March 23, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Brooks,* of *Brooks, Curtze & Silin,* for appellant Weed (No. 110).

*Frank Quinn,* of *English, Quinn, Leemhuis & Tayntor,* for appellant Brown (No. 114).

*S. Y. Rossiter,* for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1936:

This is an action by a widow to recover damages for the death of her husband in an automobile accident. The evidence was characterized by the contradictions usual in such cases, but in a general way the facts may be stated as follows: Defendant Weed was driving in a westerly direction from Corry toward Union City along the northerly side of a highway the paved portion of which is 18 feet in width. He was proceeding slightly upgrade, and in front of him, traveling in the same direction, was a large truck moving at the rate of 10 miles an hour. Weed, who was going, as he claims, at the rate of 35 miles an hour, turned out to the left in order to overtake and pass it. According to his own statement he was then about 150 feet behind the truck, but there was other testimony that he was much closer. When he got out to a point where he could see up the southerly side of the road, he observed, coming toward him, an automobile driven by defendant Brown. This car contained several guest riders, among whom was plaintiff's husband. Weed testified that the Brown car was traveling at a rate in excess of 50 miles an hour, but, since he saw the car only momentarily and as it approached head on, his estimate of its speed is obviously of little value. Being afraid, as he admitted, that he would not have time to pass the truck because of the oncoming automobile, he pulled back again to the right; he was then, according to his testimony, within about 60 feet of the truck. At the same time he applied the brakes, but there had been a light rain and there was also some oil on the pavement making a slippery condition which caused his car to skid so that it proceeded at an oblique angle into the rear of the truck and then came to a stop with its

front projecting to the south from 2 to 3½ feet beyond the center line of the highway. The truck itself went on a few feet and stopped. Meanwhile, the Brown automobile, coming down grade, was suddenly confronted by the Weed car blocking part of the eastbound portion of the road. Brown tried to meet the situation by applying his brakes and turning sharply to the right; his car went a few feet off the pavement and overturned nearly opposite to the point where the Weed car was standing. There was a conflict of testimony as to whether the two automobiles actually came into collision, but this question is of minor importance. According to Brown his car had been running at a speed not exceeding 40 miles an hour; other witnesses estimated it at 35 to 45 miles an hour. Brown claimed that he was about 50 to 75 feet from the truck when the Weed car appeared from its rear and came out into his pathway; another witness testified that the Brown car was only 40 or 50 feet from the truck when the Weed car first started to pull out to the south; still another witness placed this distance at 100 feet.

Both Weed and Brown presented points for binding instructions which were refused, and the jury found for plaintiff as against both defendants. Each of them assigns as error the refusal of the trial court to grant judgment n. o. v. in his favor, and each complains also of alleged errors in the admission of testimony and in the charge of the court.

Taking up first the appeal of defendant Brown, there is no evidence in the record of negligence in the operation of his car. As he came down from the crest of the grade toward the approaching truck he had a clear view along the southerly half of the highway for a considerable distance, and there was nothing in his pathway to put him on notice of any likelihood of danger. Plaintiff's case was presented on the theory that, in approaching the truck coming in an opposite direction, it was Brown's duty to anticipate that another vehicle

might suddenly come out from behind it and block the part of the road upon which he was traveling, and this theory seems to have received a measure of support from the learned trial judge in portions of the charge, and in the refusal of some of the points submitted by defendant Brown. The law, however, imposes no such duty upon the operator of an automobile; were it otherwise, the driver of a car would have to slow down every time he approached and passed another car, and especially a truck, going in the opposite direction. It is a fundamental principle of law that one is not bound to anticipate another's negligence. The Act of May 1, 1929, P. L. 905, article X, section 1008, paragraph (a), provides that "The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction, unless such left side is clearly visible, and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety." Brown therefore was under no duty to take into consideration the likelihood of an automobile in back of the approaching truck violating the statute, and, either by design or unexpected accident, coming over to the wrong side of the highway. Neither was the speed of the Brown car a proximate cause of the happening of the accident. The greatest distance that any witness puts the Brown car away from the truck when the Weed car ultimately came out from behind it was 100 feet.*  Even if, there-

---

* A witness, Charles Breed, testified as follows: "Q. I am asking you how far west of the truck the Brown car was when you saw it wigwagging down the road? A. I didn't see this car coming until he put on his brakes. Q. Where was that? A. Just beyond the truck; it might have been 300 feet, or might have been 150 feet. Q. Where was Weed's car then? A. Well I called it from where I stood, crossways of the road, out there in the middle. Q. When you first saw the Brown car weaving down the road the Weed car had stopped crossways of the road? A. Yes, sir." It is not clear what the distance of 300 feet or 150 feet refers to, and other parts

fore, the Brown car had been traveling at the rate of 40 miles an hour, it would have had less than two seconds in which to avoid the impending collision. Speed in excess of the statutory limit will not convict a driver of an automobile of negligence unless it be shown that such speed was the proximate cause of the accident: *Stubbs v. Edwards,* 260 Pa. 75; *Bloom v. Bailey,* 292 Pa. 348; *Collichio v. Williams,* 311 Pa. 553.

It is not clear from the evidence how far, if at all, the Weed car came over the center line to the south of the road when he first turned out to see if the pathway was clear. Whatever may have been the fact, however, in this regard, he turned back again to the north, and even if Brown saw or should have seen him at that time, Brown had every reason to assume that the attempt to pass the truck had been abandoned and that Weed would stay in back of it. Brown's first duty to act, therefore, came only after Weed's car had collided with the truck and had come out into the eastbound pathway. Brown was then faced with an imminent emergency which called merely for his best judgment under the circumstances. It may have been that he could have squeezed through between the front of the Weed car and the southerly edge of the pavement, but he chose the alternative of turning off the pavement in order to avoid the threatened collision. In so doing he cannot be convicted of negligence. In *Polonofsky v. Dobrosky,* 313 Pa. 73, under somewhat similar circumstances, the complaint was that the defendant should have driven off the pavement instead of keeping on and colliding with the oncoming car; it was held that his choice of alternatives in meeting such an emergency situation absolved him from liability.

of this witness's testimony indicate plainly that he did not purport to say that the Brown car was 150 or 300 feet west of the truck at the time when the Weed car stopped in a position projecting out on the southerly side of the highway.

For the reasons thus stated, the court is of opinion that defendant Brown's point for binding instructions should have been affirmed.

In regard to the request for binding instructions on the part of defendant Weed, the case is quite different. The fact that he collided with the rear of the vehicle ahead of him in itself called for some explanation on his part. He sought to excuse the occurrence by contending that the condition of the roadway caused his car to skid, but whether such an explanation sufficiently exculpated him was for the jury. The condition of the roadway was obvious to him and he was bound to have it in contemplation in operating his car: *Griffith v. V. A. Simrell & Son Co.,* 304 Pa. 165; *Cook v. Miller Transport Co., Inc.,* 319 Pa. 85; *Smith v. Gross,* 113 Pa. Superior Ct. 568. In approaching the rear of the truck at a speed more than three times that of the truck, and operating his car in such manner that he was obliged to apply his brakes as he did, it would appear either that he was going too fast under the circumstances or that, in view of the danger of skidding, he did not keep his car at a safe distance back of the rear of the truck. At any rate, these were questions only for the jury to decide.

Defendant Weed complains of alleged errors made by the learned trial judge in discussing the testimony. There was, however, only a general exception taken to the charge, and it has been repeatedly held that when errors are not basic and fundamental they must be made the subject of specific exceptions: *Medvidovich v. Schultz,* 309 Pa. 450. Moreover, these objections, together with others dealing with comparatively trivial matters in the admission of evidence, are without merit.

All of defendant Weed's assignments of error are overruled and the judgment against him is affirmed. The judgment against defendant Brown is reversed and is here entered in his favor.