Schu et ux. *v.* Pittsburgh, Appellant.

Argued October 21, 1940.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Bennett Rodgers,* Assistant City Solicitor, with him *Wm. Alvah Stewart,* City Solicitor, for appellant.

*Harry Diamond,* for appellees.

OPINION BY BALDRIGE, J., December 18, 1940:

The plaintiffs, husband and wife, brought an action of trespass against the defendant to recover damages for injuries to the wife, medical expenses, etc., and repairs to the car. The trial resulted in verdicts in favor of the plaintiffs for $1,242.45 and $2,000 respectively, upon which judgments were entered.

The single assignment of error in this appeal is to the refusal of the motion for judgment n. o. v. for defendant. The sole question before us is whether the evidence was sufficient to permit the jury to find that the driver of a pumper, part of the defendant city's fire apparatus, acted in "reckless disregard of the safety of others." See Motor Vehicle Code of May 1, 1929, P. L. 905, Art. X, §1002(f), and amendments thereto, 75 PS §501(f).

Giving the plaintiffs the benefit of the most favorable view of the testimony, the facts concerning the manner in which the accident took place may be summarized as follows. About 7:30 p. m. on the evening of August 4, 1937, a pumper driven by a fireman of the defendant city, in answer to an emergency fire alarm, was proceeding in a northerly direction upon West Liberty Avenue in the City of Pittsburgh. The plaintiff, William Schu, accompanied by his wife, was driving his car southwardly upon the same street when he heard the fire alarm and drove to the western curb and parked his car approximately 60 feet north of Brookside Avenue. About the same time James Connolly, riding a motorcycle, was on Brookside Avenue going toward West Liberty Avenue. He stopped his machine on the right side of Brookside Avenue, 10 feet back from

West Liberty Avenue and 4 feet from the south curb of Brookside Avenue, supporting his machine with his left foot on the ground.

When the fire apparatus came to Brookside Avenue, one of the firemen riding thereon said, "Here is the street." About this time the driver of the pumper made a sharp left turn off West Liberty Avenue, cutting the corner short and was about to enter the left traffic lane of Brookside Avenue, heading straight toward Connolly. When the pumper was about 15 feet from Connolly and apparently going to hit him, he dropped his motorcycle and ran to his left across Brookside Avenue. The driver of the pumper then suddenly swung sharply to the right and proceeded north along the left side of West Liberty Avenue for 60 feet when he struck the plaintiffs' parked car in a head on collision.

Several witnesses for the plaintiffs testified there was plenty of room for the pumper to have entered Brookside Avenue, which is 27 feet 3 inches wide at this point, and passed Connolly on his left, which was the pumper's right side of the road.

West Liberty Avenue is a wide thoroughfare, containing two sets of street car tracks, and at the time of the accident the plaintiffs' witnesses said there were no cars coming south. The distance between the curb of West Liberty Avenue, against which plaintiffs' car was parked, and the first trolley rail to their left was 17 feet. There was ample room for the driver of the pumper to pass the right of the plaintiffs' car and if he had turned but slightly to the right as he traversed the 60 feet from Brookside Avenue the collision would have been avoided. The evidence produced by the plaintiffs was contradicted by the defendant in many particulars.

The driver's explanation of his conduct was that it was necessary to turn his apparatus sharply to the right to avoid striking Connolly and the motorcycle, which had fallen immediately in the path of the pumper. The

defendant's witnesses placed plaintiffs' car only 15 feet beyond Brookside Avenue instead of 50 or 60 as claimed by the plaintiffs.

The Motor Vehicle Code of 1929, supra, specifically exempts from the ordinary traffic rules and regulations, police, fire, and hospital vehicles when engaged upon official duties, and private automobiles and trucks are required to give way to them. The general restrictions imposed upon the operators of such vehicles by the statute is that they may not drive in "reckless disregard of the safety of others."

The appellant argues that the record is bare of any evidence that shows a "reckless disregard of the safety of others." Both parties cite *Reilly et al. v. Philadelphia et al.*, 328 Pa. 563, 195 A. 897. There a police car hit a woman at a street intersection when in close pursuit of a fleeing felon in a stolen automobile. The Supreme Court held under the facts, which were quite dissimilar to those before us, that the plaintiff was not entitled to recover against the defendant city. What constitutes a reckless want of care on the part of an operator of a motor vehicle varies with the circumstances of the particular case. The rule laid down in Restatement, Torts, section 500, cited with approval in *Reilly et al. v. Philadelphia et al.*, supra, reads as follows: "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

Mr. Justice LINN, of our Supreme Court, while a member of this court, said in *Lloyd v. Noakes*, 96 Pa. Superior Ct. 164, 168: "Recklessness implies conscious appreciation of the probable extent of danger or risk

incident to contemplated action, while negligence in the legal sense implies knowledge only of a probable source of danger in the act."

The appellant contends that the accident was unavoidable; that its driver was confronted with a sudden emergency when the motorcycle appeared; and that the situation that confronted him required only the exercise of his best judgment under the circumstances: *Mulheirn v. Brown et al.*, 322 Pa. 171, 185 A. 304. This rule does not apply, however, where, as here, the defendant's conduct brought about or created the sudden emergency: *Casey v. Siciliano*, 310 Pa. 238, 241, 165 A. 1 and cases cited.

In *Mashinsky et al. v. Philadelphia*, 333 Pa. 97, 3 A. 2d 790 the court held that even if a known emergency does exist, that of itself does not justify the driving of a motor vehicle with a "reckless disregard of the safety of others." Under any circumstances one must exercise due care: *Oakley v. Allegheny County*, 128 Pa. Superior Ct. 8, 193 A. 316.

The jury was warranted in concluding that the driver of the pumper in cutting the corner in the left lane of traffic on Brookside Avenue and heading directly toward the motorcycle instead of keeping to his right where he could have safely passed Connolly, created a dangerous situation that he should have anticipated, and it was his own reckless disregard of the consequences of his act that made it necessary for him to turn again sharply to the right. In such circumstances the appellant cannot take advantage of the rule that an emergency was created which excused or justified the driver's action. Furthermore, his conduct in running head on into the plaintiffs' car after making a sharp turn to the right to avoid the motorcyclist was sufficient evidence of "reckless disregard of the safety of others" to go to a jury. It could have well concluded that by the exercise of a little care by the defendant's driver the

impact would not have occurred, and that his unwarranted conduct at that time created an unreasonable risk involving a high degree of probability of death or serious bodily harm to others.

We think the question of defendant's liability was very properly submitted to the jury in a charge of which there can be no just complaint.

Judgment of the court below is affirmed.