Volz et ux. *v.* Dresser, Appellant.

Argued May 4, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, RHODES, HIRT and KENWORTHEY, JJ.

*R. T. Mutzabaugh,* with him *F. M. Nash, of Nash &
Mutzabaugh,* for appellant.

*E. G. Potter,* of *Gallup, Potter & Gallup,* with him
*R. B. Apple,* for appellees.

OPINION BY BALDRIGE, J., October 5, 1942:

John K. Volz, Sr. and Nellie, his wife, brought an ac-
tion of trespass against Doris S. Dresser to recover for
personal injuries received by Volz and damages to the
wife's Ford car resulting from a collision with the de-
fendant's Cadillac car. The trial resulted in a verdict
in favor of John K. Volz, Sr. for $2410.20, and Nellie
Volz for $89.80. Judgments were entered on the verdict.
The appellant took one appeal instead of two as there
were two judgments. At the argument before us she
elected to proceed on the judgment in favor of the hus-
band.

The appellant's first complaint is to the refusal of
her motion for judgment n. o. v. She asserts that there
was no evidence of negligence on the part of John
Leilich, her chauffeur, to warrant submission of that
question to the jury.

The plaintiffs lived in Olean, New York and accord-
ing to the testimony offered on their behalf on the even-

ing in question Mrs. Volz, who had purchased a car to take her to and from work, gave her son, 17 years of age, whose competence as a driver is not in dispute, permission to use it to attend a night ball game at Bradford, Pennsylvania. The son and his father, who accompanied him, left the ball field about 10:40 P.M. when the game was about over and went to their parked car on a lot on the east side of Seward Avenue, which runs generally north and south with a cartway 26 to 28 feet wide. Young Volz in leaving the parking lot, and before entering Seward Avenue from the east, stopped and looked in both directions but as he was unable to get a good view, he drove out a little further so that the bumper of the car extended about 6 inches into the cartway of Seward Avenue where he again stopped to observe the traffic moving in both directions. While standing in that position the defendant's Cadillac car, driven by her chauffeur John Leilich, traveling north on Seward Avenue, struck the Ford car throwing Volz, Sr., who was sitting in the front seat, against the windshield causing him severe injuries. Volz, Jr. testified that a man appeared south of his car walking from the east toward the west and about the time this pedestrian had passed the middle of the cartway his car was hit. This witness saw defendant's car approaching for a distance of 150 feet to his left, approximately at right angles to his car and estimated that the oncoming car was being operated at a speed of 40 to 50 miles per hour.

Leilich, testifying for the defendant, estimated his speed at from 20 to 25 miles per hour. In giving his version of the collision he said when he was "taking his half out of the middle" of Seward Avenue he observed a man step out from behind a parked car on the west side of the avenue and walk toward the middle for a distance of 10 feet. He did not apply his brakes but swerved quickly to his right in an endeavor to avoid.

running down the pedestrian, whom he hit a glancing blow, then "gassed" his car and turned to the left in an unsuccessful effort to miss being hit by the Ford car. Leilich admittedly knew that a baseball game was being played and was about over and that a dangerous condition existed when and where the collision occurred owing to the parking of cars along the highway in this area and moving traffic. The appellant contends that the appearance of the pedestrian in Leilich's path created a sudden emergency without fault on his part and therefore he was not liable for an error of judgment. That rule is not applicable if, as here, the emergency was due to one's own negligence: *Casey v. Siciliano,* 310 Pa. 238, 242, 165 A. 1; *Gajewski v. Lightner,* 341 Pa. 514, 19 A. 2d 355; *Schu et ux. v. Pittsburgh,* 143 Pa. Superior Ct. 101, 105, 16 A. 2d 752, affirmed 341 Pa. 324, 19 A. 2d 409. The jury was warranted in concluding that if there was a sudden emergency it was due to Leilich's negligence as he could have seen this pedestrian while he was walking a distance of at least 10 feet if he had been watchful, and that his failure to exercise the care the circumstances required was the sole and proximate cause of the crash between the two cars.

It is unnecessary to determine whether the negligence, if any, of plaintiff's son would be imputable to his mother, as appellant did not appeal from the judgment entered in her favor. We might state parenthetically that as the car was not being operated at the time of the collision on business of Mrs. Volz, but under permission given by her to the son for his own pleasure, that even if the son had been negligent it would not have been imputable to his mother: *Piquet v. Wazelle,* 288 Pa. 463, 467, 136 A. 787; *Hildock v. Grosso,* 334 Pa. 222, 5 A. 2d 565; Restatement, Torts, §485.

The appellant's complaint to the court's affirming plaintiffs' points which stated that any negligence of

the son would not be imputable to the father as he did not have control of the manner in which the car was being operated is without merit. The alleged negligent conduct of the son could not be imputable to the father, a passenger, as the relation of master and servant or principal and agent did not exist nor did the father control the manner of the operation of the car: *Nutt v. Pennsylvania Railroad*, 281 Pa. 372, 126 A. 803. Agency does not arise simply by showing a family relationship; there must be other additional proof: 5 Am. Jur., Automobiles, §498. "It is only when the driver is the servant or agent of the passenger at the time of the negligent act and that act is committed within the scope of the servant's or agent's employment, ...... that the negligence of the driver will from the mere relationship of the parties be imputable to the passenger. In all other cases the test is, did the passengers have a right to a share in the control of the vehicle?" *Rodgers et ux. v. Saxton*, 305 Pa. 479, 488, 158 A. 166. See, also, *Watkins v. Overland Motor Freight Co., Inc.*, 325 Pa. 312, 318, 188 A. 848; *Mork et ux. v. Caslov et al.*, 327 Pa. 298, 192 A. 903; *Finkelstein et ux. v. McClain*, 331 Pa. 198, 201, 200 A. 596; *Keller et ux. v. Keystone Furniture Company*, 132 Pa. Superior Ct. 547, 555, 1 A. 2d 562. Nor did the attendance at a ball game by the father and son create a joint undertaking as would make negligence of the son imputable to the father: *Rodgers et ux. v. Saxton*, supra, pp. 486, 487.

Volz, Sr. was 51 years of age and did not drive a car himself. Just before the collision the Volz car was standing still and the father was engaged in cleaning his glasses. The impact was so sudden that he had no time to give any warning to his son beyond the exclamation "Look out!" The duties of a passenger to watch for vehicular traffic are not tantamount to those of a driver: *Alio v. P. R. R. Co.*, 312 Pa. 453, 167 A. 326;

*Landy v. Rosenstein et al.,* 325 Pa. 209, 188 A. 855; *Keller et ux. v. Keystone Furniture Company,* supra, and cases cited p. 557. Constant interference with a driver is apt to tend to increase, rather than diminish, damages: 5 Am. Jur., Automobiles, §488.

The appellant argues that the Ford car was driven from a private driveway onto a through highway upon which traffic was approaching.

Volz, Sr. told his son after their stop 3 feet from the east side of the cartway of Seward Avenue that he had better drive a little closer to see both ways. This was not a direction to the son to violate the Vehicle Code of May 1, 1929, P. L. 905, §1014, as amended 75 PS §573, which provides that a car entering a highway from a private driveway shall yield the right of way to vehicles approaching on the highway. Furthermore the Volz car did not actually enter the highway within the meaning of that statute, as the evidence shows that it came to a stop with its bumper only extending 6 inches into the highway. There was no evidence to support a finding of contributory negligence. The court, therefore, would have committed error had it submitted that question to the jury: *Fingeret et ux. v. Mann,* 319 Pa. 262, 265, 178 A. 674.

The last position taken by the appellant is that the court failed to instruct the jury adequately respecting "the manner in which the evidence should be applied in considering the American Experience Mortality Tables" introduced in evidence, citing *Di Pietro, Guardian v. Great A. & P. Tea Co.,* 315 Pa. 209, 173 A. 165, which held that where the mortality tables are introduced the court should carefully give instructions concerning their use and all the factors which tend to limit their application. The trial judge stated that while the tables offered in evidence showed plaintiff's expectancy of 20.2 years, it would not necessarily be the expectancy of Mr. Volz. In determining the probable duration of his life the jury should consider his sex,

prior state of health, nature of his daily employment and its perils, if any, manner of living, personal habits, individual characteristics and other facts about which the jury was given information. The requirements set forth in the Di Pietro case were met substantially.

A careful review of the testimony convinces us that there is no reason for disturbing the judgment of the court below.

Judgment is affirmed.

KELLER, P. J., dissents.