## Eisenhower et al., Appellants, *v.* Hall's Motor Transit Company et al.

Argued Dec. 4, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused January 18, 1945.

*John B. Martin,* with him *Carl Rice* and *Witmer & Rice,* for appellants.

*John L. Pipa, Jr.,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1945:

Leroy Eisenhower, minor plaintiff, was severely injured while riding in the cab of a truck which was being

operated by his brother, John Eisenhower, on behalf of Hall's Motor Transit Company. His action for damages was nonsuited on the ground (1) that in respect to defendant company he was a trespasser and (2) that there was not sufficient evidence of negligence on the part of the operator to warrant the submission of the case to the jury. These are the two questions now presented for our consideration.

John Eisenhower had been working as a truck driver for defendant company for more than four years, operating a daily run from Sunbury to Williamsport and return. Leroy, who was 18 years of age at the time of the accident, had been employed for a couple of months by the Pennsylvania Railroad but, being idle at the time, accompanied John on the run of November 30, 1940. At Williamsport he assisted John in loading the truck. There was a "rule of the company" forbidding the drivers from carrying any persons as passengers and notice of this rule was posted at the company's terminal in Sunbury, but John, during the preceding summer, had asked Paul Lentz, the general manager of the company, whether he might take Leroy with him on the truck for the purpose of visiting the dentist in Williamsport, and Lentz is said to have given him the requested permission. In answer to the question: "Was there any further conversation?" John testified: "I would ask him about it and he said to take him along he might be able to learn something, something like that, and some day maybe he could put him to work". On about ten occasions thereafter Leroy accompanied John on his runs and, according to John's testimony, was seen by Lentz when leaving on the truck. He was also seen on these occasions by Peter Lentz, who was the manager in charge of the Williamsport terminal, and by Walter Inkrote, the dispatcher and platform boss at the Sunbury terminal, as well as generally by other company employees, but no objection was ever voiced by anyone. Leroy assisted John on the truck in the work of loading and unloading

and thus presumably was "learning something" that would qualify him for subsequent employment by the company.

Under the circumstances narrated we think there was sufficient evidence to justify a jury in finding, if it saw fit, that on the day of the accident Leroy was not a trespasser. There is nothing in the testimony to indicate by what authority the so-called "rule of the company" was promulgated, whether by action of the company's board of directors or one of its executives or the general manager himself, but, in any event, while the exact duties of the general manager are not set forth, it is to be presumed that he was in charge of the functional operations of the company and that, if he permitted a person to ride on the trucks for any purpose that might be of benefit to the company, the latter would be bound thereby. It is true that permission granted to John to take Leroy with him on a single trip would not be equivalent to a general authorization, but if Paul Lentz, as general manager, told John that he should take Leroy with him in order that the latter might gain experience so that Lentz could some day "put him to work", and if on various trips that followed Lentz saw Leroy riding with John to Williamsport and registered no objection, thereby justifying the inference that his tacit acquiescence confirmed and continued the permission previously given, a jury might well find that Leroy's status was that of an invitee: cf. *Kierkowsky v. Connell,* 253 Pa. 566, 570, 98 A. 766, 767; *Hollup v. United News Co.,* 115 Pa. Superior Ct. 585, 587, 588, 176 A. 51, 52. And if he was on the truck in that capacity he was entitled to the exercise of ordinary care on the part of the company's driver.

Was there sufficient evidence for the submission of the case to the jury on the question of negligence? The vehicle involved in the accident was a combination truck and trailer. In the loading at Williamsport heavy barrels of syrup, paper crates and radios were all piled up

in the front part of the trailer instead of being distributed uniformly over the entire floor-space. There was testimony that the effect of this would be to bind the "fifth wheel" by means of which the tractor and trailer were attached, impair the steering, and render the brakes on the wheels of the trailer less effective. This manner of loading was, in the judgment of John Eisenhower, the best method to pursue and in itself can scarcely be said to have constituted negligence, but at least it created a condition which John had to take into account in operating the truck, especially since, in starting out through Williamsport, the wheels twice caught and there was seen to be difficulty in steering around street-corners.

The accident happened about four thirty o'clock in the afternoon immediately after passing the Lycoming-Northumberland county line. It had been snowing since ten or eleven o'clock in the morning and the road was icy and slippery; while John, by means of the windshield wiper, was able to see ahead, Leroy could not do so because of the snow on the windshield in front of where he was sitting. The highway was cindered at various points but not on the downward slope where the accident occurred. Part way down this slope there was a curve to the right; in negotiating it the tractor-trailer skidded a distance of 80 feet to the left and crashed across the berm and into a tree with such force as to drive the motor back through the dashboard, pinning Leroy's feet against the back of the seat and almost completely severing them; subsequently his feet and portions of both his legs had to be amputated.

The negligence charged against the operator of the truck was that, with knowledge of the manner in which the trailer was loaded, instead of diminishing or at least maintaining the average speed of 15 miles an hour at which he had been carefully proceeding over the cindered portions of the road, he actually increased his speed to 20 to 30 miles an hour in descending the slope and rounding the curve; at the same time he kept the

truck in third gear, which was next to the highest; the fifth wheel "bound" so that the vehicle could not be properly steered around the curve; he jammed on the brakes very sharply, which, according to the testimony, he should not have done. The question whether evidence of these alleged facts would be sufficient for presentation of the case to the jury must be answered in the affirmative. The Motor Vehicle Code of May 1, 1929, P. L. 905, section 1002(a), provides that "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing." Accordingly, what may be a permissible rate of speed at one time and place and under given circumstances may be wholly improper on other occasions and under different circumstances, and in cases where, as here, unusual conditions existed, it has been uniformly held that the question as to whether the speed was excessive was for the jury: *Moquin v. Mervine,* 297 Pa. 79, 84, 146 A. 443, 444; *Knox v. Simmerman,* 301 Pa. 1, 6, 151 A. 678, 679; *Curry v. Riggles,* 302 Pa. 156, 159, 153 A. 325, 326; *Bertinelli v. Galoni,* 331 Pa. 73, 76, 77, 200 A. 58, 60; *Hollup v. United News Co.,* 115 Pa. Superior Ct. 585, 587, 176 A. 51; *Devereaux v. Caldin,* 127 Pa. Superior Ct. 595, 600, 193 A. 372, 373, 374.

The skidding of a vehicle does not, in and of itself, establish negligence, it being incumbent upon the plaintiff to prove that it resulted from the negligence of the defendant: *Johnson v. American Reduction Company,* 305 Pa. 537, 541, 158 A. 153, 154; *Luderer v. Moore,* 313 Pa. 71, 73, 169 A. 106; *Lithgow v. Lithgow,* 334 Pa. 262, 265, 5 A. 2d 573, 575; *Wertz v. Shade,* 121 Pa. Superior Ct. 4, 8, 9, 182 A. 789, 791. But when there is evidence that the vehicle, loaded in a manner known to involve difficulties in steering, was operated in high gear around a curve, down hill, on an icy, slippery highway, at what

may be deemed to be an excessive speed, it clearly becomes the function of the jury to say whether, under such circumstances, the skidding that occurred was attributable to the negligent operation of the vehicle. This appears from a multitude of cases in our appellate courts,* the facts in several of which are quite similar to those here present.

Judgment reversed and new trial granted.

MR. JUSTICE DREW dissents.

---

* For example: *Griffith v. V. A. Simrell & Son Co.*, 304 Pa. 165, 168, 169, 155 A. 299, 300; *Luderer v. Moore*, 313 Pa. 71, 73, 169 A. 106; *Cook v. Miller Transport Co., Inc.*, 319 Pa. 85, 87, 88, 179 A. 429, 430; *Mulheirn v. Brown*, 322 Pa. 171, 177, 185 A. 304, 306; *Kotlikoff v. Master*, 345 Pa. 258, 266, 267, 27 A. 2d 35, 39; *Goldenberg v. Philadelphia Rural Transit Co.*, 112 Pa. Superior Ct. 163, 166, 170 A. 360, 361, 362; *Smith v. Gross*, 113 Pa. Superior Ct. 568, 570, 571, 572, 173 A. 478, 479, 480; *Corse v. Ferguson*, 118 Pa. Superior Ct. 606, 607, 608, 180 A. 65, 66; *Matzasoszki v. Jacobson*, 122 Pa. Superior Ct. 180, 183, 186 A. 227, 228; *Fitzpatrick v. Pralon Cleaners & Dyers*, 129 Pa. Superior Ct. 437, 440, 441, 195 A. 644, 646, 647; *Knoble v. Ritter*, 145 Pa. Superior Ct. 149, 154, 155, 20 A. 2d 848, 850, 851; *Laessig v. Cerro*, 149 Pa. Superior Ct. 155, 158, 27 A. 2d 731, 732.