J-A29007-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| SANDRA D. HARVEY, PLENARY GUARDIAN OF THE PERSON AND OF THE ESTATE OF DENNIS J. HARVEY AND MARGARET HORNER, THE ADMINISTRATRIX OF THE ESTATE OF SHANNON M. HANRIGHT, DECEASED AND MICHELE HAZEL, INDIVIDUALLY, AND AS CUSTODIAN OF HER MINOR CHILDREN, BRETT STEBBING, AND GEORGE STEBBING, <br><br><br> v. <br><br> GREGORY M. PALUMBO, ADMINISTRATOR OF THE ESTATE OF MICHAEL HANRIGHT, DECEASED AND CON-WAY FREIGHT, INC. AND CON-WAY TRANSPORTATION SERVICES, INC., <br><br><br> APPEAL OF: SANDRA D. HARVEY, MARGARET HORNER, AND MICHELE HAZEL | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> No. 278 WDA 2014 |

Appeal from the Order January 28, 2014,
Court of Common Pleas, Clearfield County,
Civil Division at No. 2009-948-CD

BEFORE:  DONOHUE, ALLEN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED FEBRUARY 20, 2015**

Appellants, Sandra D. Harvey, plenary guardian of the person and of

the estate of Dennis J. Harvey, Margaret Horner, the administratrix of the

estate of Shannon M. Hanright, deceased, and Michele Hazel, individually,

and as custodian of her minor children, Brett Stebbing and George Stebbing,

(hereinafter, Sandra Harvey, Margaret Horner, and Michele Hazel will be

---

*Retired Senior Judge assigned to the Superior Court.

referred to collectively as "Appellants"), appeal from the trial court's order granting summary judgment in favor of Con-Way Freight, Inc. and Con-Way Transportation Services, Inc. (together, "Con-Way"). For the reasons that follow, we conclude that issues of material fact remain for resolution by a jury, and thus we reverse the trial court's order and remand the case for trial.

The parties here do not dispute the factual background giving rise to this action, which the trial court summarized as follows:

> This negligence action arises out of a tragic automobile accident that occurred on June 9, 2008 on Pennsylvania U.S. Route 322 in Bradford Township, Clearfield County, Pennsylvania. [Appellants] allege that [Michael Hanright ("Hanright")] was driving a 1991 Oldsmobile Cutlass Supreme in which Michele Hazel, Shannon Hanright, Dennis Harvey, Brett Stebbing, and George Stebbing were passengers. [Hanright] was driving behind a truck-tractor combination, being owned by Con-Way and driven by Stanley Hale [("Hale")], in the eastbound lanes of U.S. 322. The portion of the road on which the vehicles were travelling is a two-lane highway with a double yellow line designating that segment as a no-passing zone. There is no question that [Hanright[1]] was not driving in a legal manner.
>
> As [Hanright] approached a right-hand turning lane, at the intersection of Tipple Lane, he attempted to pass the truck driven by [Hale] by using the turning

---

[1]  In its opinion, the trial court here stated that "There is no question that **Mr. Hale** was not driving in a legal manner." Trial Court Opinion, 12/17/2013, at 2 (emphasis added). We have substituted Hanright's name here to correct what we consider to be a simple mistake by the trial court. There is no question that Hanright was driving illegally at the time of the accident, and Appellants have not, conversely, alleged that Hale violated any traffic laws.

lane. [Hanright] ignored two 'Right Lane Must Turn Right' signs at the beginning and end of the lane and a purported warning from one of the passengers that the turn-off was not a passing lane. [Appellants] assert that said signage could not be seen due to vegetation covering the warning. With the turning lane being short in duration, and [Hanright] running short of time and distance to pass the truck, [Hanright] drove with his driver side tires on the berm of the road in an effort to pass the truck driver. [Hanright's] car continued traveling along the gravel berm and grassy embankment beside the Hale truck. As the Hanright car attempted to reenter the eastbound lane it was struck by the truck driven by [Hale]. Hanright's car was propelled into oncoming traffic and collided with a Mack dump truck traveling in the opposite direction. As a result of the collision, Shannon Hanright and Dennis Harvey were ejected from the automobile. [Shannon Hanright] subsequently passed away due to her infirmities.[2] [The other passengers] also sustained permanent and grave injuries in the accident.

This litigation commenced on May 13, 2009, with [Appellants] filing a Writ of Summons. The action was brought on behalf of all persons who were passengers in the automobile driven by Hanright. A Complaint was subsequently filed on August 9, 2009. [Appellants] have alleged in their Complaint that the injuries suffered by Dennis Harvey, Michele Hazel, Brett Stebbing, and George Stebbing, as well as the death of Shannon Hanright, were the direct and proximate result of the combined negligence of Hanright and Con-Way. Con-Way later filed an Answer, New Matter, and Cross-claim on October 30, 2009. An Amended Answer, New Matter, and Cross-Claim were later filed by Con-Way on December 2, 2009.

Con-Way filed a Motion for Summary Judgment on October 30, 2013, seeking to dismiss [Appellants'] claims in their entirety against Con-Way. The [trial

_____

[2] Hanright died of a self-inflicted gunshot wound later in the day.

- 3 -

court] entertained oral arguments on the [m]otion on December 11, 2013. Con-Way contends that summary judgment is proper, because [Appellants] have failed to offer any evidence on which a jury could conclude that the driver of the Con-Way truck was negligent or that any of his actions proximately caused the accident at issue. [Appellants] aver that Hale was negligent for failing to see Hanright passing him on the right, and, if, in fact, he really did fail to see Hanright when was beside the Con-Way truck, once he did see him, he neglected, failed or refused to allow Hanright re-entry to the traveled portion of the roadway, causing Hanright to lose control, and enter the westbound lane of travel.

Trial Court Opinion, 12/17/2013, at 1-3 (footnotes omitted).

In an opinion and order dated December 17, 2013, the trial court granted Con-Way's motion for summary judgment. In addressing whether Appellants had presented any evidence to create a material issue of fact regarding Hale's negligence as a proximate cause of the accident, the trial court focused on a series of older cases, including **Mulheim v. Brown**, 185 A. 304 (Pa. 1934) and **Smith v. Port Authority Transit**, 390 A.2d 249 (Pa. Super. 1978), for the proposition that "one is not bound to anticipate another's negligence." **Mulheim**, 185 A. at 305; **Smith**, 390 A.2d at 252. Based upon this principle, the trial court ruled as follows:

In applying the principles enunciated in Mulheim and Smith to the case at bar, it is obvious that Con-Way's driver had no duty under the circumstances. There is no contention that he was not acting in a lawful manner when driving his truck. The [trial court] would be imposing an onerous duty upon the truck driver to look in his mirrors at every few seconds no matter what the surrounding circumstances.[5] Even if the driver had gazed into his

- 4 -

mirrors, he would not be required to come to the conclusion that [Hanright] was trying to pass him. It would be reasonable to deduce that if Hale saw Hanright in his mirrors that Hanright was probably turning right since he was in a turning lane that was clearly marked as such. It would also be a logical conclusion to believe that [Hanright] would have reduced his speed when he realized that he could not pass Hale's truck or stopped when he saw there was not enough space to successfully do so.

---

[5] [Appellants] proffered expert testimony on this issue. According to said expert, Mr. Guntharp, a driver in [Hale's] position should have been looking in his mirrors every five (5) to eight (8) seconds.

Trial Court Opinion, 12/17/2013, at 7-8. On January 28, 2014, the trial court granted Appellants' motion pursuant to Rule 341(c) of the Pennsylvania Rules of Appellate Procedure, ruling that an immediate appeal of its grant of summary judgment in favor of Con-Way would facilitate resolution of the entire case.

On appeal, Appellants present two issues for our review and determination:

1. Whether the [trial court] erred in granting [s]ummary [j]udgment in favor of [Con-Way], finding that no negligence could be found on the part of the Con-Way driver and that the jury could not be permitted to find a verdict for [Appellants].

2. Whether the [trial court] erred in disregarding the expert report of Walther Guntharp, which concluded that [Hale] was negligent.

- 5 -

Appellants' Brief at 4. As these issues are interrelated, we will review them together.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261–62 (Pa. Super. 2013) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)).

The requisite elements of a negligence action include a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal

connection between the conduct and the resulting injury; and the actual loss or damage resulting to the interest of another. *Matthews v. Konieczny*, 527 A.2d 508, 511-12 (Pa. 1987) (quoting *Morena v. South Hills Health System*, 462 A.2d 680, 684 n.5 (Pa. 1983)). The issue in this case centers on the first two elements, whether the law imposed a duty under the circumstances presented and, if so, whether Con-Way's driver breached that duty.

In concluding that Con-Way had no duty in this case, the trial court relied on a series of older cases, including *Mulheim v. Brown*, 185 A. 304 (Pa. 1943) and *Smith v. Port Authority Transit*, 390 A.2d 249 (Pa. Super. 1978). In these cases, Pennsylvania appellate courts held that a motorist cannot be negligent (or contributorily negligent) for a failure to anticipate the negligence of another motorist. *Mulheim*, 185 A. at 305; *Smith*, 390 A.2d at 251. In *Mulheim*, our Supreme Court concluded that a driver was not negligent for failing to anticipate that a vehicle approaching from the opposite direction would suddenly make a U-turn into his path. *Mulheim*, 185 A. at 305. In *Smith*, this Court found no evidence of contributory negligence when a driver failed to anticipate that a bus would suddenly move into his lane of traffic without giving him any warning via turn signal or horn. *Smith*, 390 A.2d at 250. Based upon *Mulheim* and *Smith*, the trial court ruled that Con-Way's driver had no duty to look in his passenger-

side mirrors to detect the presence of Hanright attempting to pass him on the right. Trial Court Opinion, 12/17/2013, at 7-8.

On appeal, however, Appellants contend that *Mulheim* and *Smith* have no application, as the issue is instead whether Con-Way's driver, **irrespective of any obligation to anticipate the negligence of another**, violated the standard of care he owed to other motorists. In this regard, we note that in another 1943 case our Supreme Court distinguished *Mulheim* by holding that the negligence of another driver "does not, of course, excuse this defendant's negligence." *Sudol v. Gorga*, 31 A.2d 119, 120 (Pa. 1943). And in *Smith*, after finding no evidence to support a finding that the plaintiff could be contributorily negligence, we reminded that "if there [were] any evidence upon the consideration of which reasonable minded individuals might disagree as to whether or not the plaintiff was guilty of negligence which contributed to the accident, then the question of such contributory negligence [would be] for the jury, not the court, to determine." *Smith*, 390 A.2d at 251.

To establish a breach of the standard of care by Con-Way's driver, in response to the motion for summary judgment Appellants submitted an expert report from Walter A. Guntharp ("Guntharp") of Guntharp & Associates. In his expert report, Guntharp contends that operators of large trucks like the one being driven by Hale have limitations on their maneuverability, and that as a result truck drivers, unlike car drivers, must

constantly scan all of the mirrors on their truck to be "constantly aware of their surroundings." Reply to Motion for Summary Judgment, 11/27/2013, Exhibit C at 5. According to Guntharp, truck drivers are trained to "keep your eyes moving," "get the big picture," and always be alert to avoid potential collisions. *Id.* To this end, truck drivers are trained to check their mirrors in a continuous manner every 3-5[3] or 5-8[4] seconds. Guntharp also cites to a report from the Spectrum Consultant Group, which estimated that Hanright's vehicle would have been in the process of passing Hale for a total of 14.7 seconds, including 7.1 seconds before the intersection with Tipple Lane and 7.6 seconds after the intersection to the time of impact. Motion for Summary Judgment, 10/30/2013, Exhibit I at 9. From these calculations, Guntharp opined as follows:

> A proper mirror scan would have allowed Mr. Hale to observe the passing car before it reached the end of the turning lane. Given the speed of the car, Mr. Hale would have been able to determine that it did not intend to turn and recognize that the car would run out of room before it could pass his truck. At that point, a reasonable [] prudent driver would have applied his brakes and assisted Mr. Hanright in safely completing the pass. If Mr. Hale had checked his mirrors after the turn into Tipple Lane, he could have clearly recognized that Mr. Hanright was in trouble and applied his brakes at that time. Had he seen [Hanright's vehicle] at either point and applied the

---

[3] Guntharp's report cites two sources for this requirement, the National Safety Council's Defensive Driving Court – Professional Truck Driver, and the Commercial Driver's License Manual. *Id.*

[4] The Smith System, through which (according to Guntharp) Hale acknowledged he received training. *Id.*

> braking necessary to assist Mr. Hanright, there would have been time and space for the car to recover its proper lane of travel.

Id. at 6-7.

The trial court acknowledged that its decision conflicted with Guntharp's opinions. Trial Court Opinion, 12/17/2013, at 6 n.4. In particular, the trial court's determination that Hale had no obligation to check his passenger-side mirrors in the circumstances presented is directly at odds with Guntharp's opinion that truck drivers must do so at all times (given their relative inability to brake, swerve, or accelerate in the same manner as an automobile). Significantly, the trial court's conclusion here arguably even conflicts with the opinion of Con-Way's own expert witness, Brooks Rugemer ("Rugemer"). According to Rugemer, "Hale didn't have to focus **as much** on his right hand mirrors because there was not a lane to his right for traffic to approach." Motion for Summary Judgment, 10/31/2013, Exhibit G at 4 (emphasis added). In addition, the trial court's finding that even if Hale had checked his mirrors and had seen Hanright's car he could have reasonably assumed that Hanright was turning right onto Tipple Lane is also directly contrary to Guntharp's opinion that given the speed of Hanright's car he was not turning right but rather was attempting to pass on the right. Reply to Motion for Summary Judgment, 11/27/2013, Exhibit C at 6-7.

In our view, the trial court's disregard of Guntharp's expert opinions in deciding Con-Way's motion for summary judgment was error. While the standard of care for motorists is to exercise the ordinary care required in the circumstances presented, *see, e.g.*, *Fredericks v. Castora*, 360 A.2d 696, 698 (Pa. Super. 1976), "[e]xpert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person."[5] *See, e.g.*, *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. 1988). This Court has held that this principle applies to truck drivers, since the skills and training required to operate a

---

[5] The learned Dissent's overreliance on the *Fredericks* case is misplaced for at least two reasons. First, the issue in *Fredericks* was whether the two defendant truck drivers should have been held to a higher standard of care because they had more than twenty years of experience driving large trucks. *Fredericks*, 360 A.2d at 698 ("[R]eference is made to the evidence that both defendants were professionals who drove trucks for a living and had done so for over 20 years."). This Court concluded that that the truck drivers' level of experience was not a relevant consideration, concluding that a "requirement that experienced truck drivers be subject to a higher standard of care does not impress us as being a useful concept to infuse into the law of vehicle negligence." *Id.* In the present case, Hale's level of experience (or lack thereof) is entirely irrelevant to the determination of the appropriate standard of care to be applied in this instance.

Second, to the extent that *Fredericks* can be read to stand for the proposition that the standard of care for truck drivers is identical in every respect to that of all other drivers of motor vehicles, it has been implicitly overruled by subsequent decisions of this Court. As set forth in the text, expert testimony regarding the standard of care is important when the profession at issue involves special skills and training, and this Court has identified the driving of large trucks as one such profession since the skills and training required to operate a large truck are beyond the common knowledge of lay persons. *See Storm*, 538 A.2d at 64; *Christiansen*, 667 A.2d at 404.

large truck[6] are beyond the common knowledge of lay persons. ***Christiansen v. Silfies***, 667 A.2d 396, 404 (Pa. Super. 1995) ("[I]t would have been proper to have a qualified expert describe what the applicable standard of care was [for truck drivers]."); ***see generally Brandon v. Ryder Truck Rental, Inc.***, 34 A.3d 104, 108-09 (Pa. Super. 2011); ***Powell v. Risser***, 99 A.2d 454, 456 (Pa. 1953) ("[E]xpert testimony is necessary to establish negligent practice in any profession.").

Recently, in ***Thompson v. Ginkel***, 95 A.3d 900 (Pa. Super. 2014), this Court reiterated the following standard of review regarding consideration of expert testimony when deciding a motion for summary judgment:

> It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury. ***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 528 (Pa. 1995); ***In re Estate of Hunte***r, 205 A.2d 97, 102 (Pa. 1964) ("The credibility of witnesses, professional or lay, and the weight to be given to their testimony is strictly within the proper province of the trier of fact.'". Accordingly, trial judges are required "to pay deference to the conclusions of those who are in the best position to evaluate the merits of scientific theory and technique when ruling on the admissibility of scientific proof." ***Grady v. Frito–Lay, Inc.***, 839 A.2d 1038, 1045 (Pa. 2003) (citing ***Frye v. United States***, 293 F. 1013 (D.C. Cir. 1923)).

---

[6] The truck being operated by Hale in this case was approximately 67 feet in length.

- 12 -

> At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007). This clearly includes expert testimony and reports submitted by the nonmoving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot sua sponte assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, ***see Grady***, ***Frye***; and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact. ***Miller***, 664 A.2d at 528.

***Id.*** at 905-06 (quoting ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1161 (Pa. 2010)).

It has been said that bad facts make bad law, and given the extremely reckless nature of Hanright's driving, this case may appear to be an example of that principle. Guntharp's expert report, however, when viewed in the light most favorable to the Appellants as the non-moving parties, creates issues of material fact for the jury to decide, including Hale's standard of care under the unique circumstances presented here and whether he breached this standard of care. Because genuine issues of material fact remain for a jury's determination, we must reverse the trial court's grant of summary judgment and remand the case for trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

Allen, J. joins the Memorandum.

Strassburger, J. files a Dissenting Memorandum.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2015