# Pieckowicz, Appellant, *v.* Oliver Iron & Steel Company et al.

Argued October 2, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused January 18, 1945.

*Marvin D. Power*, with him *Charles J. Margiotti* and *Margiotti, Pugliese & Casey*, for appellants.

*E. V. Buckley*, with him *Mercer & Buckley, David Glick, Duff, Scott & Smith, James J. Lawler, Prichard,*

*Lawler, Malone & Geltz, Samuel Fuss, Ira R. Hill,* and
*Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE HUGHES, December 29, 1944:

This is an appeal from the refusal of the court below
to take off a compulsory nonsuit. Sussman Brothers
leased a building owned by the Oliver Iron and Steel
Company, the east wall of which collapsed, causing the
death of Stanley Pieckowicz. The building was located
on the south bank of the Monongahela River. In 1936
it was owned by the Carnegie Illinois Steel Corporation
and leased to C. L. Newsome, who conducted a grain
and feed business in it. In May of that year fire oc-
curred in the building, which left fire marks on the wall
in question. In 1936 the building east of the wall that
collapsed was owned by the American Sheet and Tin
Plate Company and was leased to C. L. Newsome. By
merger, the buildings passed to the Carnegie Illinois
Steel Corporation on May 22, 1936. During May of 1936
fire occurred in this building also. Shortly after the
fire, this building was torn down, except the west wall,
which was the party wall serving both buildings. The
wall left standing formed the east wall of the building
owned by the Oliver Iron and Steel Company and leased
to Sussman. The wall, prior to the time it collapsed,
was more than 25 years old. The record is barren of evi-
dence that would show that prior to the falling the wall
was leaning, cracked, unsupported, or in a weakened con-
dition. Although there were fire marks on the wall, there
was no evidence showing to what extent the wall had
been exposed to fire or any deleterious effect of fire
upon it.

On May 22, 1941, Stanley Pieckowicz was seated on
a concrete slab at the northeast corner of the building.
There was a thunder storm with high wind. The wall in
question extended several feet above the roof of the
building which was then occupied by Sussman for the
storage of reclaimed sugar, potato and coffee bales. The

bales or bags weighed 300 to 500 pounds and were piled about one and a half to two feet from the wall. They were piled five bales high. Although there was evidence that about a week before the accident these bales were piled against the wall ten feet high and two or three bags fell out when the wall collapsed, there was no evidence that the bags leaned or pressed against the wall.

The plaintiff offered evidence that after the building was demolished in 1936, children played ball there and older people loafed there; that boys made a roller coaster track for bicycles over the uneven surface. There was evidence that the concrete slab in question had been used as a seat since 1936 and persons had played games of cards and dice upon it. The witnesses testified that the use made of the lot was similar to that of many other lots along the river in the immediate vicinity. There was evidence that the watchman for the Oliver Iron and Steel Company, as well as the police, would break up gambling there but did not disturb the children who were playing.

At the close of plaintiff's case a motion was made to enter a compulsory nonsuit because the plaintiff had failed to establish (a) a permissive use of the premises so far as Stanley Pieckowicz was concerned and (b) there was no evidence of negligence on the part of the defendants. A compulsory nonsuit was entered, and with that order we are in accord.

The learned trial judge states: "Numerous witnesses were called to show that the river in front of the lot in question was used for bathing. The immediate river bank, however, was not a part of the premises. There was testimony that children rode their bicycles on the vacant lot and, in spite of the uneven surface of the ground and the presence of a large deep pit in the center of the open space, played baseball there. None of this testimony, however, was sufficient to prove that the lot could be regarded as a known 'recreation center.' . . . It is our opinion that the testimony adduced failed to estab-

lish the vacant lot as a playground. Further, there is positive evidence that the adults who played cards, shot crap, and otherwise gambled, were chased by the police, as well as by a watchman employed by the Oliver Iron and Steel Company. The evidence adduced failed to establish permissive use. The decedent therefore was either a trespasser or, at most, a mere gratuitous licensee.

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care to make the condition reasonably safe, or to warn them of the condition and the risk involved therein": Restatement of Torts, Vol. 2, Sec. 342, page 932; *Musto v. Lehigh Valley Railroad*, 327 Pa. 35, 192 A. 880. After carefully examining the evidence, we are of the opinion that the plaintiff failed to establish even lack of ordinary care upon the part of the defendants in maintaining this wall. There was no sufficient proof to show this lot was either used as a playground or a permissive way, nor was there any evidence, sufficient in character, to show knowledge on the part of the defendants of a defective condition of the wall. "Unless the defendant knew, or ought to have known, that the condition of the wall was such that it was likely to fall and injure one in the vicinity, he is not liable. There is not a suggestion of actual notice to the possessor of the land that the wall was in a dangerous condition. Plaintiffs rely entirely upon inference to charge the defendant with notice. The fact that the wall fell is not of itself sufficient: *Kehres v. Stuempfle*, 288 Pa. 534, 539, 540, 136 A. 794; *Bechtel v. Franklin Trust Co.*, 120 Pa. Superior Ct. 587, 182 A. 800. Walls of abandoned buildings have been known to stand not only for years but for centuries. It was incumbent on plaintiffs

to show some condition existing before the accident that would lead a person exercising reasonable and ordinary care to believe that the wall was likely to fall": *Riebel et al. v. Land Title Bank & Trust Co.,* 143 Pa. Superior Ct. 136, 17 A. 2d 742.

The evidence fails to support the plaintiff's theory that the lot was a playground. "The amount of use that will bring otherwise private ground within the playground rule must depend to a large extent on the circumstances of each case. It may be said that the use contemplated is such as to cause the place to be generally known in the immediate vicinity as a recreation center, and its occupancy should be shown to be of such frequency as to impress it with the obligation of ordinary care on the part of the owner": *Fitzpatrick v. Penfield,* 267 Pa. 564, 572, 109 A. 653. Nor was it shown to be a permissive way. "A permissive way is a license to pass over the property of another; it may be either express or implied, but must, however, be restricted to a well defined location, and especially in the case of an implied public permission, must be frequently, notoriously and continuously used by the public, to raise the inference of acquiescence on the part of the landowner in such use. Does the relevant evidence establish a way or crossing of the character above indicated? One cannot maintain a prescriptive right by showing that he was in the habit of crossing another's land, but not upon any definite way or any particular route or line. The adverse enjoyment of the way must be in the same place within definite lines for the whole period of limitation, and not spread out over open ground in many divergent tracks: Jones on Easements, section 294. The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing, or generally confer upon such persons a character or right other than that of trespassers: 33 Cyc. 921": *Conn v. Pennsylvania Railroad,* 288 Pa. 494, 502, 136 A. 779.

Having concluded that the plaintiff failed in establishing a permissive use of the premises so far as the decedent, Stanley Pieckowicz, was concerned, and that there was no negligence shown on the part of the defendants which would permit the submission of the case to a jury, it becomes unnecessary to consider the other assignments of error.

Judgments affirmed.