## Schulz, Excrx., *v.* Reading Transportation Company, Appellant.

Argued April 9, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

374

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine & Stokes,* for appellant.

*William F. Quinlan,* with him *Victor Frey,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 27, 1946:

This is an appeal from the refusal of the court below to enter judgment for the defendant n. o. v. in an action of trespass.

On January 4, 1944, Katherine Rosenkranz was fatally injured when defendant's motor bus on which she was a passenger for hire went out of control on Huntington Pike between Southampton in Montgomery County and Fox Chase in Philadelphia; then traveled a distance of approximately 150 feet, turned completely around and broke a telegraph pole, about ten inches in diameter, located 13 feet from the left edge of the concrete.

After the action had been brought in behalf of the victim, she died as a result of her injuries. The action was then continued in the name of Eleanor Schulz as Executrix. After a trial, a verdict was returned in favor of the plaintiff in the amount of $5,000.00.

Appellant contends that no case of negligence was made out. The facts are these: The motor bus was proceeding in a southerly direction on the Pike at 9 A. M. The operator of the bus described the road as being "very slippery, icy and sleety; it was partly raining and snowing and slushy". There were no chains on the tires. The Pike is intersected by Susquehanna Road at a point where to one driving southerly, the Pike curves "very sharply to the left". Approaching Susquehanna Road, the Pike for a distance of 244 feet north of Susquehanna

Road drops in a 2½% grade; from Susquehanna Road south the grade increases to one of 6½% for approximately 156 feet. An engineer described this latter grade as "a heavy grade, especially around the curve". The bus driver testified that as he approached Susquehanna Road the bus was proceeding at a rate of between 15 and 20 miles per hour, and that as he was drawing near to Susquehanna Road, he took his foot off the accelerator and as he came around Susquehanna Road, he "suddenly went into a skid". He was asked: "Just as you crossed Susquehanna Road how fast were you going?" He answered: ". . . Not more than five miles an hour, because I expected a passenger, and I had started to pull up a bit." His testimony at the first trial of this case was then read to him. There he had testified: "The road was icy and slippery. I was traveling between 16 and 20 miles per hour, and as I hit Susquehanna Road at the curve, the bus went into a skid." He had driven over this route for more than six months. The trip in which the accident occurred was his second trip that morning over that road. He testified that he was not "on schedule" on the second trip and he "thought" he was "a little late".

The court below in refusing to enter judgment for the defendant n. o. v. correctly took the view that plaintiff's evidence made out a prima facie case of negligence because it showed "in addition to the skidding of the bus, the heavy grade of the hill, the sharp curve of the highway, the icy and slippery condition of that road and others in the locality, the bus being driven at approximately fifteen miles per hour, the course and length of the skidding, and the effect of the force of the collision upon both the telegraph pole and the bus." These facts justified the jury's conclusion that the operator of the bus was operating the bus at a rate of speed which under the circumstances was excessive and negligent, and that under the weather and road conditions then confronting him he was not proceeding with due caution. This

was not a case where a car or bus suddenly encounters an unforeseen patch of ice on the highway and then skids. The operator of this bus had traveled over this part of the highway only two hours previously and he knew exactly what was ahead of him. The general weather conditions also were such as to put him on notice that he should proceed down grade with caution, at a slow rate of speed. This he did not do. The momentum of the bus was such that its skidding on this hill was to be expected. It was the driver's duty to reduce that momentum. This duty he breached and it is a legitimate inference that the accident resulted from that breach.

In *Griffith v. V. A. Simrell & Son,* 304 Pa. 165; 155 A. 299, this court declared that a driver of a motor vehicle is "bound to take into account the slippery condition of the street and to reduce his speed to the point where he [can] control the movements of the car". In *Cook et al. v. Miller Transport Co.,* 319 Pa. 85 at 88; 179 A. 429, we held that a driver of a vehicle must "exercise the due and necessary care demanded by that [wet and slippery] condition of the street", and we said "In *Prinz v. Lucas,* 210 Pa. 620; 60 A. 309; and *McGettingan v. Quaker City Automobile Co.,* 48 Pa. Superior Ct. 602, it is held that drivers of automobiles are chargeable with knowledge that their cars may skid or slue, and must guard thereagainst. . . ."

In *Laessig v. Cerro,* 149 Pa. Superior Ct. 155 at 158, the Superior Court said, quoting from the language of the court below in that case: "In the instant case we have more than a mere skidding proved. We also have proof and an agreement that the icy condition which caused the skidding of defendant's car was not an exceptional or isolated condition, but on the contrary, it was a condition which existed over the entire highway in the entire vicinity of the accident. In other words, the skidding in this case might reasonably have been anticipated and it was for the jury to determine, under

proper instructions from the court, whether, under the circumstances, the defendant was guilty of negligence."

The case of *Master, Admrx. v. Goldstein's F. & P.*, 344 Pa. 1; 23 A. 443, is distinguishable from the instant case because in that case, as was pointed out in this court's opinion, "At the time of the accident there was no ice anywhere on Lincoln Highway between Philadelphia and Lancaster except on the ascending hill going west from Devon; and that, although the surface of that hill was very slippery, the witnesses who had been using the road did not discover the thin coating of ice until they stepped onto the road. It also appeared that at 4:00 A. M. of the same day, only two hours before, there was no ice on Devon Hill."

In *Louis De Antonio v. New Haven Dairy Co.*, 105 Conn. 663, 136 A. 567, 569, the Supreme Court said: "It appeared that he [the driver of the truck] was entirely familiar with the road and with its general condition on the morning in question, knew the truck, its weight and that of its load, and its characteristics, and it was for the jury to determine whether the skidding was not reasonably to be anticipated and more effectively guarded against; whether the use of third rather than a lower gear, the rate of speed indicated by the circumstances and results, the failure to apply brakes until the collision was imminent, the driver's conduct in directing and confining his efforts to an attempt to get the front wheels in line with the rear by turning the former to the left, or any other element of the situation, constituted negligence in not preventing or restricting the skidding of the truck."

In *Miles, Admr., v. Myers*, 353 Pa. 316, this court said: "In the instant case the evidence shows that the tires on the defendant's car were not equipped with chains, although the highways were in an icy condition. Failure to equip the wheels of a car with chains is not negligence per se, but it is a fact which with other facts may support a finding of negligence."

The court below also correctly held that in a case of this character "where the accident was caused by the means of transportation . . . proof that a bus skidded as a result of which a passenger was injured, is sufficient to make out a prima facie case in behalf of the passenger [and] shift the burden to the carrier to show that there was no negligence on its part . . . and the question of its negligence is [then] for the jury". This statement was a recognition of a principle long applied by the courts of this and other jurisdictions. In *Maerkle v. Pittsburgh Rys. Co.*, 311 Pa. 517; 165 A. 503, we quoted with approval this statement from Shearman & Redfield on Negligence, Secs. 59 and 60, as follows: "When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care." See *Young v. Yellow Cab Co.*, 118 Pa. Superior Ct. 495; 180 A. 63, and 38 Am. Juris. Sec. 291, p. 985. See also *Phila. & R. R.R. Co. v. Anderson*, 94 Pa. 351, and *Galbraith v. Busch*, 267 N.Y. 230, 196 N.E. 36.

Shearman & Redfield on Negligence, Revised Edition (1941), Vol. I, Sec. 56, p. 152, makes this statement: "It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer. [Citing cases.] It is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim and the inference of negligence. If a passenger in a car is

injured by striking the seat in front of him, that of itself authorizes no inference of negligence. If it be shown, however, that he was precipitated against the seat by reason of the train coming in collision with another train or in consequence of the car being derailed, the presumption of negligence arises." See also Ibid Sec. 55, p. 143.

In *Maltz v. Carter*, 311 Pa. 550, 166 A. 852, the facts were that a man was riding in the front seat of an automobile. Without warning, the car swerved and left the road on the right-hand side and struck a tree about 7 feet from the edge of the concrete and up an 18 inch rise. The machine was demolished, the driver so seriously injured that he died and the passenger suffered severe permanent injuries. The passenger later died and a suit by his administratrix against the owner of the car resulted in the recovery of a judgment. The court below, in refusing defendant's motion for a new trial and for judgment n. o. v., cited *Knox v. Simmerman*, 301 Pa. 1, 151 A. 678, and quoted from our opinion in that case as follows: "It was a clear day on a broad, dry pavement, the coupé was in the exclusive control of the defendant, and the accident was such as under normal conditions does not occur; hence, it so happening, unexplained, would justify a jury in presuming the defendant was negligent. It is not a case of res ipsa loquitur, for negligence is not presumed from the mere happening of the accident, but from the circumstances under which it occurred. It was an abnormal occurrence such as in the usual course of events does not occur. An automobile when driven along a dry level road in daylight at proper speed and under control is not accustomed to leave the pavement and dash against a stone pile at the roadside. That the coupé did this very extraordinary thing is some evidence that it was not properly driven." [1] The court

---

[1] The rule just quoted does not apply in a suit arising as in *Nebel v. Burrelli et al.*, 352 Pa. 70, 41 A. 873, from a collision between a vehicle of a common carrier and a vehicle under *other control or management*. The reason for this is obvious. The fact of the collision is entirely consistent with the theory that it may have been due en-

also cited the case of *Shafer v. Lacock, Hawthorne & Co.,* 168 Pa. 497, 504 and also *Gawronski v. McAdoo,* 266 Pa. 449, where we said: "Where a thing is shown to be under the management of defendant and the accident is such as in the ordinary course of things does not happen if proper care is used, the burden is on defendant to prove that the accident did not arise from want of care." In reviewing the judgment of the court below we said: "The undisputed facts as narrated above made out a prima facie case, which could only be overcome by exculpatory testimony, and this the record fails to establish."

The inference of defendant's negligence from the circumstances of the accident giving rise to the injury sustained ". . . is but an aspect of the rule of circumstantial evidence applicable to civil actions generally [2]. . .": See 45 C. J. Sec. 770, p. 1199. ". . . plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possesses the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation." See 45 C. J. Sec. 773, p. 1205.

---

tirely to the negligence of the owner and operator of the other vehicle. When a set of circumstances is consistent with two theories they are of no value as proof of either.

[2] The doctrine is most frequently applied in cases of injury to passengers for hire but it has also been applied to cases where persons have been injured by falling objects or collapsing structures. See 45 C.J., Sec. 771, p. 1201.

Shearman and Redfield on Negligence, Revised Edition, Sec. 56, p. 156, says: "The rule has been applied to many and varied situations: Fall of cinders . . . Fall of overhead wires upon the road below . . . Fall of a building into the street . . . Fall of an elevator . . . Collapse of stairs. . . . Breaking of a stirrup on a wooden horse in an amusement park . . . Unexplained movement of a freight car . . . Collision involving a railroad car in which plaintiff was a passenger."

The testimony in this case prevented an issue of fact for the jury. The court's refusal to enter judgment for the defendant n. o. v. was proper. The judgment is affirmed.