Kotal, Admr., *v.* Goldberg, Admrx., Appellant.

Argued May 27, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Henry C. Kessler, Jr.,* with him *William C. Schultz, Jr., Luria & Still, Charles H. Still, William A. Luria* and *Raymond R. Smith,* for appellant.

*Joseph Rothbard,* with him *Clarence M. Lawyer, Jr.,* and *Rothbard & Rothbard,* for appellee

OPINION BY MR. JUSTICE MUSMANNO, November 24, 1953:

The Pennsylvania Turnpike is renowned throughout the nation for its excellent construction, spacious dimensions, and engineering design, calculated to produce maximum safety with celerity of travel. It is made up of two separate highways, one eastbound and the other westbound, separated by a medial strip 10 feet wide, each comfortably accommodating two lanes of traffic moving in the same direction. The Turnpike has lately achieved, unfortunately, a reputation for sanguinary accidents which has somewhat blemished the proud banner which originally proclaimed it as the "Dream Highway." Most of the traffic fatalities and injuries on this stupendous thoroughfare have been traced to the demon of speed. Speed is the burden of this particular lawsuit.

On the evening of November 23, 1949, Geraldine A. Goldberg, owner of a 1949 Studebaker two-door Sedan, entered the Pennsylvania Turnpike at Carlisle, Pennsylvania, carrying with her a guest passenger, Celestine Kotal, antecedent of the plaintiff in this case. Their ultimate destination being Freeport, Pennsylvania, they traversed the distance from Carlisle to Donegal without mishap or incident, passing through the latter station at about 11 p.m. Some four miles west of Donegal, the westbound highway of the Turnpike "veers" to the left. At or about this point, the Studebaker caught up with a Schreiber truck-trailer, operated by Jack Greenawalt, which was moving at 50 miles per hour. In this "veering" area the Studebaker went ahead of the truck-trailer, passing it on the left with no deceleration of speed, estimated to be 60 miles per hour. Here the highway began a downgrade. The weather was dry, but the surface of the roadway was lighted only by the headlamps of the vehicles and the fitful illumination shed every 25 or 50 feet by "cat eyes", the glass reflectors atop the short posts border-

ing the medial strip and the right side of the highway. After passing the heavy truck-trailer, the Studebaker continued at its same pace, but when the highway bent to the right, the Studebaker failed to take the curve, left the concrete and plunged into the middle untravelable space, knocking over several reflector posts. Its velocity unabated, it upset, righted, and turned over several times until it reached the middle of the eastbound lane when the vagaries of momentum sent it cartwheeling back across the medial strip and on to the westbound lane where it finally came to a stop, lying on its roof with wheels in the air. In the violent capsizings of the car, Miss Goldberg was thrown to the concrete of the eastbound lane and Mrs. Kotal to the berm of the westbound lane, both suffering mortal injuries resulting in practically instantaneous death.

At the trial of the lawsuit instituted by the administrator of the estate of Celestine Kotal against the administratrix of the estate of Geraldine Goldberg, the driver of the Schreiber truck-trailer testified to the happening of the tragic event. The jury returned a verdict in the sum of $10,182.00. The defendant moved for judgment n.o.v. and for a new trial. Both motions were refused by the court below and this appeal followed.

The defendant argues that the decedent driver committed no act of proved negligence and that the jury was permitted to guess as to the cause of the accident. The jury could well find from the evidence that the cause of the crash was the excessive speed of the Studebaker car under the particular circumstances of the highway. In *Knox v. Simmerman*, 301 Pa. 1, the nature of the accident was sufficiently analogous to the one before us to apply to this case the principle therein enunciated: "It was a clear day on a broad dry pavement, the coupe was in the exclusive control of the

defendant, and the accident was such as under normal conditions does not occur; hence, it so happening, unexplained, would justify a jury in presuming the defendant was negligent. It is not a case of res ipsa loquitur, for negligence is not presumed from the mere happening of the accident, but from the circumstances under which it occurred. It was an abnormal occurrence such as in the usual course of events does not occur. An automobile when driven along a. dry level road in daylight at proper speed and under control is not accustomed to leave the pavement and dash against a stone pile at the road side. That the coupe did this very extraordinary thing is some evidence that it was not properly driven. In Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497, 504, the rule is stated, that, 'When the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care.' "

Certainly, if the defendant's decedent had driven around the Schreiber truck-trailer and had approached the curve to the right at proper speed and under control the deplorable double death would not have occurred.

Defendant's counsel in his brief says: ". . . the answer as to why this car left the highway is open to pure speculation. Did the driver become ill? Did she have a heart attack? Did a mechanical defect assert itself suddenly and throw the automobile out of control? Did the left front wheel, without warning, come loose from the machine, throwing the car out of control? . . . Was there some object on the road which threw the car out of control? All of these questions

are unanswered either directly or by reasonable inference by the proof submitted by plaintiff, yet they are equally or more consistent with what happened than is the unwarranted assumption that the safe driver all at once became a negligent driver."

Of course, there is no limit to the number of imaginative situations which may be conjured up to hypothetically explain away an accusative set of circumstances. It can be argued in the realm of uninhibited conjecture that the victim of an assassin's bullet might have died of a heart seizure before the bullet penetrated his chest and unless the prosecution can eliminate every heart malady as the cause of death, no conviction is possible. In *Saganowich v. Hachikian*, 348 Pa. 313, this Court said: ". . . the law does not require the elimination of every possible cause of the accident other than that on which plaintiff relies, but only such other causes, if any, as are fairly suggested by the evidence . . . Proofs to a degree of absolute certainty are rarely attainable; it is sufficient that they be such as to satisfy reasonable minds."

Also, in *Liguori v. Philadelphia*, 351 Pa. 494: ". . . it is equally well settled that, since proof to a degree of absolute certainty is rarely attainable in any litigated factual controversy, the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which the plaintiff relies."

That, of course, is the very principle upon which the jury system is based, i.e., that disputed facts and disputed inferences from established facts shall be submitted to twelve reasonable and well-balanced minds. And when they unanimously are of accord that from certain facts it is inevitable that common sense and logic dictate only one reasonable conclusion, *that* con-

clusion will be accepted by the law as trustworthy and true.

When the driver of a car crosses over to his wrong side of the road and strikes another car on its right side of the road, a prima facie case of negligence is made out against the first driver. And the injured person is not required to produce a blue print to show *why* the offending motorist acted in the manner he did. A fortiori, the representatives of the victim of a driver who dashes completely off the highway with such velocity that the car overturns numerous times has no legal burden to explain the mechanical, mental or muscular lapse which precipitated the catastrophe.

Geraldine A. Goldberg had a duty to exercise ordinary care in the operation of her vehicle for the safety of Celestine Kotal, her guest passenger: *Conroy v. Commercial Casualty Ins. Co.*, 292 Pa. 219; *Ferrell v. Solski*, 278 Pa. 565. Whether she acquitted herself of that legal duty was a question of fact for the jury.

The defendant complains that the court did not charge sufficiently on the subject of circumstantial evidence, but this was not a case where circumstantial evidence would conclusively and exclusively tip the scales of the verdict one way or the other. The plaintiff produced an actual eye witness of the dreadful happening and the defendant produced another. Their stories somewhat conflicted as to details of the occurrence, and the jury believed the plaintiff's witness.

While it is true, as defendant's counsel submits in his brief, that one who loses his life in an accident is presumed to have exercised due care, it is equally true that this presumption is a rebuttable one. The jury by its verdict decided that the presumption dissolved under the impact of the physical facts and the testimony of an eye witness; and we are satisfied that the record supports that dissolution.

In his charge to the jury the able Trial Judge in the court below indicated that if the jury believed that a tombstone costing $350 was properly a part of the "funeral expenses" allowable under the Wrongful Death Act, that item could be included in the verdict. The jury found that it was part of the funeral expenses and the defendant now complains that there is no authority in law for such a finding.

We do not see why a modest tombstone should not be regarded as a legitimate part of funeral expenses. What else is it? A tombstone is an integral part of the sacred ritual of burial. If it is to be said that there is no absolute need for a tombstone, it can be argued that there is no imperative necessity for a casket. In point of history, bodies were originally returned to the earth in a winding sheet alone. "In the sweat of thy face shalt thou eat bread, till thou return unto the ground; for out of it was thou taken: for dust thou art, and unto dust shalt thou return." No biblical scholar, however, insists that this affirmation intends an injuncton against the clothing of the lifeless body in robes of wood, stone or marble. In the very dawn of a civilized age tombs appeared to house and to protect from beast and element the lifeless clay.

Today no cemetery is without tombstones, no grave remains unmarked. Even in holocausts resulting from conflagration, explosion, earthquake or flood, where identification of individual bodies must sadly fail, a general monument is raised to the common dead. Over every military grave the Cross or the Star of David blesses the named martyr beneath. And where large numbers are interred in a common grave because an exploding shell commingled the remains beyond separation, a cenotaph rises to honor the Unknown Dead.

It is unthinkable today that anyone should be consigned to the earth without a shaft, big or small, naming him who has departed forever from his mourning kin and friends. Those who have no respect for the dead can have but little appreciation of the dignity of man, either living or dead.

The cost of a modest tombstone, bronze tablet or other suitable identifying marker over the grave of a deceased person who is the subject of litigation under the Wrongful Death Act is a proper item of expense under "Funeral Expenses," and the plaintiff here is not required to file any remittur of the amount of $350 included in the verdict for that purpose.

The judgment of the court below entered on the full verdict and the order refusing a new trial are affirmed.

CONCURRING OPINION BY MR. JUSTICE BELL:

Appellant raised the question of whether the exclusive control doctrine applies in this case; this important question was not passed upon or decided by the majority opinion. Our decisions in connection with the application or nonapplication of the exclusive control doctrine have caused, unfortunately, much confusion among the Bench and Bar, with a resultant multiplication of litigation. It is therefore important to clarify this question—at least as far as the opinion of one Judge can—because, as the great Chief Justice COKE wisely said "the knowne certaintie of the law is the safetie of all."

The facts are simple and not unusual. Plaintiff's decedent, Celestine Kotal, was a *guest passenger* in the automobile owned and operated by defendant's decedent, Geraldine Goldberg. On November 23, 1949, at about 11:00 o'clock p.m., Miss Goldberg was driv-

ing her car in a westwardly direction on the Pennsylvania Turnpike in Westmoreland County. The Turnpike has two wide lanes for eastbound and two wide lanes for westbound traffic, the eastbound lanes and the westbound lanes being separated by a medial strip ten feet wide. Defendant's automobile was being driven at a speed of sixty miles per hour in the left lane of the two-lane westbound highway. After passing a truck, defendant's car left the highway on her left, ran onto the medial strip, overturned, rolled over several times and finally came to rest on its roof. In the course of its careening movement, both occupants were thrown from the car and killed. The Turnpike, at the point where the car ran off the highway, bent slightly to the right and was slightly downgrade. The road was dry, traffic very light, and there was no visible traffic or object or evidence to explain or justify defendant's car running off the road.

The facts were sufficient, without the aid of the exclusive control doctrine which, in my opinion, is inapplicable, to take the case to the jury and justify a verdict for plaintiff. *Ebersole v. Beistline,* 368 Pa. 12, 82 A. 2d 11. Cf. also: *Logan v. Bethlehem City,* 324 Pa. 7, 187 A. 389; *Wright v. Stracssley,* 321 Pa. 1, 182 A. 682; *Bashore v. Publix Shirt Corp.,* 370 Pa. 142, 87 A. 2d 468.

One cannot count the myriad cases which hold that the plaintiff has the burden of proving by a fair preponderance of the evidence (1) that defendant was negligent, i.e., either directly or by facts and circumstances from which want of due care on the part of the defendant may be reasonably and legitimately inferred; and (2) that defendant's negligence was the proximate cause of the injury: *Thompson v. Gorman,* 366 Pa. 242, 77 A. 2d 413; *Martin v. Marateck,* 345 Pa. 103, 106, 27 A. 2d 42.

The evidence is sufficient to warrant recovery if it describes, pictures or visualizes what actually happened sufficiently to enable the fact-finding tribunal reasonably to conclude that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident. Proof of negligence may be furnished by the circumstances themselves and it is not essential to have eye witness testimony, but where the circumstantial evidence is offered because direct proof is not available, it must provide as the only reasonable inference the conclusion that the accident was caused by the negligence of the defendant: *Ebersole v. Beistline*, 368 Pa. 12, 16, 17, 82 A. 2d 11; *Stanalonis, Admr. v. Branch Motor Express Co.*, 358 Pa. 426, 429, 57 A. 2d 866, 868; *Pfendler v. Speer*, 323 Pa. 443, 445, 185 A. 618, 619; *Donaldson, Exr., v. Pittsburgh Rwys. Co.*, 358 Pa. 33, 36, 37, 55 A. 2d 759, 761. In the instant case the evidence described, pictured and visualized facts and circumstances which were sufficient to enable the jury reasonably to conclude that the defendant was guilty of negligence; or in other words, the only reasonable inference from the facts and circumstances proved by plaintiff was (in the absence of countervailing evidence) that the accident was caused by the negligence of the defendant.

The verdict is likewise sustainable under the following authorities: *Knox v. Simmerman*, 301 Pa. 1, 151 A. 678; *Wright v. Straessley*, 321 Pa. 1, 182 A. 682; *Maltz v. Carter*, 311 Pa. 550, 166 A. 852; *Brewer v. Brodhead*, 341 Pa. 384, 19 A. 2d 117. Compare also: *Ravis v. Shehulskie*, 339 Pa. 161, 14 A. 2d 70 and *Hickerson v. Daskam*, 313 Pa. 379, 169 A. 769; *Bashore v. Publix Shirt Corp.*, 370 Pa., supra.

In each of those cases a guest passenger was allowed to recover against the driver of the automobile in which he was riding when he proved that on a clear

day or night, on a wide highway, with no interfering traffic, and for no disclosed reason or necessity, the driver swerved at a curve and ran off the road, injuring the passenger. In each of those cases the Court found from the attendant circumstances some evidence of negligence,* but because the evidence of negligence was slight the Court buttressed its opinion by referring to the so-called exclusive control doctrine, which was both unnecessary and in my opinion inapplicable.

We come then to the specific question: Does the so-called exclusive control doctrine apply in the instant case where a passenger sues a driver of an automobile in which he was riding?

The exclusive control doctrine is an exception to and negates and nullifies the centuries-old principles of negligence. In practical operation and effect it would, like its first cousin, res ipsa loquitur, take every case to which it applies to the jury with the result that nonsuits and judgments n.o.v. will be one with Nineveh and Tyre. The well settled and just principles of negligence, as well as the principle of stare decisis, demand that before a Court wipes out these principles and extends the exclusive control doctrine generally if not universally, we should analyze and review some pertinent and analogous cases which have applied the general principles of negligence, as well as some of the more important cases where the exclusive control doctrine has been applied or rejected.

*Shafer v. Lacock, Hawthorn & Co.*, 168 Pa. 497, 32 A. 44, is not only the leading case, but the (Pennsylvania) father of the so-called exclusive control doctrine. In that case Shafer sued in trespass to recover damages for the destruction of his property by the

---

* Cf. however: *Riley v. Wooden*, 310 Pa. 449, 165 A. 738, which denied recovery to a guest passenger under similar facts.

negligence of defendant's workmen. Plaintiff employed defendant, who was engaged in the tin roofing business, to repair the roof of his house. The defendant's workmen took up to the roof a fire pot; they admitted that sparks escaped from their fire pot because of their carelessness and set plaintiff's house on fire. The Court wisely allowed the jury to infer negligence from all this evidence and said, inter alia (pages 503-504): "There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred, and this we think is one of them . . . . In Sherman and Redfield on Negligence, secs. 59 and 60, the rule applicable to the case is thus stated: 'The accident, the injury *and the circumstances under which they occurred are in some cases sufficient** to raise a presumption of negligence and thus cast on the defendant the burden of establishing his freedom from fault. When the thing which causes the injury [the fire in the fire pot] is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care.' "

In that case there was undoubtedly adequate evidence of negligence to make out a prima facie case; nevertheless the doctrine of exclusive control—control of the fire in defendant's fire pot which was the thing which caused the injury—was properly applied to buttress plaintiff's case. Unfortunately subsequent opinions quote only the second sentence in this doctrine and then apply *literally* this restricted quotation to

---

\* Italics throughout, ours.

other facts and other fields of negligence where a careful analysis shows it is inapposite.

The second leading case in Pennsylvania is *Durning v. Hyman,* 286 Pa. 376, 133 A. 568. In that case plaintiff was injured by the breaking of a seat in a movie house and the Court held that the case was for the jury (a) because an inference of negligence arose from the circumstances, and (b) under the *Shafer v. Lacock* doctrine of exclusive control.

From *Shafer-Lacock* and *Durning-Hyman,* a number of opinions transported the exclusive control doctrine to the automobile and many other fields and used this appealing doctrine to buttress or base their opinions in cases where the evidence of defendant's negligence was slight or nonexistent. Neither *Shafer v. Lacock* nor Shearman and Redfield ever established or contemplated, as we shall see, a literal interpretation and universal application of this doctrine.

*This Court has applied,* not the exclusive control doctrine, but *the general principles of negligence* (a) in *Janock v. Baltimore & Ohio R. R. Co.,* 252 Pa. 199, 97 A. 205, where a jury was permitted to infer negligence and a passenger allowed to recover from evidence that a car left the railroad tracks while rounding a curve at an unusual speed; (b) in *Bashore v. Publix Shirt Corporation,* 370 Pa. 142, 87 A. 2d 468, where this Court held that plaintiff made out a prima facie case when he proved that defendant's truck ran off the highway in the daytime and crashed into his restaurant; (c) in *Lanning v. Pittsburg Railways Co.,* 229 Pa. 575, 79 A. 136, where defendant's trolley wire broke and fell on plaintiff and this Court held that these facts were not sufficient to make out a prima facie case of negligence; (d) in *Welsh v. Jump House Wrecking Co.,* 306 Pa. 228, 159 A. 170, where *a passenger* in a trolley car was denied recovery when it

collided with a truck; (e) in scores of "skidding" cases: *Lundin v. Heilman*, 375 Pa. 315, 100 A. 2d 626; *Cirquitella v. Callaghan, Inc.*, 331 Pa. 465, 200 A. 588; *Master v. Goldstein's Fruit & Produce, Inc.*, 344 Pa. 1, 23 A. 2d 443; *Richardson v. Patterson*, 368 Pa. 495, 84 A. 2d 342, (in which many cases are reviewed or cited in the majority and dissenting opinions);—even when plaintiff was *a passenger* or a pedestrian: *Lundin v. Heilman*, 375 Pa., supra; *Cirquitella v. Callaghan, Inc.*, 331 Pa., supra; *Simpson v. Jones*, 284 Pa. 596, 131 A. 541; *Wertz v. Shade*, 121 Pa. Superior Ct. 4, 182 A. 789; *Smith v. Gross*, 113 Pa. Superior Ct. 568, 173 A. 478; (f) in cases where *a passenger* is injured because the car in which he was riding was being driven on the wrong side of the road: *Miles v. Myers*, 353 Pa. 316, 45 A. 2d 50; (g) in *Direnzo v. Pittsburgh Bridge & Iron Works*, 265 Pa. 561, 109 A. 279, where a girder fell on a workman-plaintiff; (h) in *Lentz v. Allentown Bobbin Works*, 291 Pa. 526, 140 A. 541, where a rotten roof board broke; (i) in *Travers v. Delaware County*, 280 Pa. 335, 124 A. 497, where a county bridge collapsed; (j) in *Kehres v. Stuempfle*, 288 Pa. 534, 136 A. 794, where an old shed collapsed; (k) in *Sheets v. Sunbury & Northumberland Electric Railway Co.*, 237 Pa. 153, 85 A. 92, where the limb of an oak tree fell on plaintiff; (l) in *Pieckowicz v. Oliver Iron & Steel Co.*, 351 Pa. 209, 40 A. 2d 416, where a 25 year old wall fell on plaintiff; (m) in *Phila. Ritz Carlton Co. v. Phila.*, 282 Pa. 301, 127 A. 843, where a water pipe broke; (n) in *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783, where a bull dozer driven by defendant ran over a large stone and snapped it into plaintiff's decedent, killing him; (o) in *Miller v. Hickey*, 368 Pa. 317, 81 A. 2d 910, where a fire escape broke while plaintiff was walking down it and recovery was denied; (p) in *Anderson v. Murdoch S. & T. Co., Inc.*, 371 Pa. 212, 88 A. 2d 720,

(where a bailor sued for goods in a warehouse destroyed by fire); (q) in cases where a business invitee slipped, tripped or fell in a store or restaurant—*Jerominski v. Fowler, Dick & Walker*, 372 Pa. 291, 93 A. 2d 433; *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 88 A. 2d 873; *Brand v. Donahoe's, Inc.*, 357 Pa. 474, 55 A. 2d 362; *Dickey v. Boggs & Buhl, Inc.*, 345 Pa. 453, 29 A. 2d 1; (r) and finally, in the countless cases of suits against a property owner for injuries resulting from a defect in his sidewalk—*in all these cases the thing which caused the injury was under the management of the defendant* and the accident would not ordinarily happen if defendant exercised due care, *yet this Court has required plaintiff to prove negligence* and in the absence of adequate proof thereof has denied recovery. For example, in *Cirquitella v. Callaghan, Inc.*, 331 Pa. 465, 200 A. 588, where defendant's car skidded and struck the rear of the car in which *plaintiff was a passenger*, this Court, in the course of its opinion said (page 467): "The plaintiff must prove that the collision resulted from the negligence of defendant . . . . 'The skidding of a vehicle does not of itself establish or constitute negligence. [Richardson v. Patterson, 368 Pa. 495, and cases cited.] It is encumbent upon the plaintiff to prove the skidding resulted from the negligent act of the defendant; otherwise he is absolved from the consequences.' "

If the exclusive control doctrine were literally applied, we would have to reverse all of the aforesaid cases and hundreds more which could readily be cited.

This Court has recently and repeatedly pointed out that the general principles of negligence apply to—and the so-called *exclusive control doctrine does not apply to*—trespass cases for injuries arising out of *collisions* (1) *between an automobile and another vehicle, Ebersole v. Beistline*, 368 Pa. 12, 82 A. 2d 11; *Cir-*

quitella v. Callaghan, Inc., 331 Pa. 465, 200 A. 588; McDonald v. Ferrebee, 366 Pa. 543, 79 A. 2d 232; Welsh v. Jump House Wrecking Co., 306 Pa. 228, 159 A. 170; Miller v. Pennsylvania Railroad Company, 368 Pa. 507, 84 A. 2d 200; or (2) between an automobile and a pedestrian, Thompson v. Gorman, 366 Pa. 242, 77 A. 2d 413; Logan v. Bethlehem City, 324 Pa. 7, 187 A. 389; Martin v. Marateck, 345 Pa. 103, 27 A. 2d 42; Moore v. Esso Standard Oil Co., 364 Pa. 343, 72 A. 2d 117; Stanalonis v. Branch Motor Exp. Co., 358 Pa. 426, 57 A. 2d 866; Stauffer v. Railway Express Agency, Inc., 355 Pa. 24, 47 A. 2d 817.

In Ebersole v. Beistline, 368 Pa., supra, an automobile in broad daylight, ran into the rear of a bicycle and killed the child riding it. There was no evidence where the boy came from, nor how and when he got in front of defendant's car. In spite of the fact that the defendant was driving at the time of the accident at 25 miles an hour on a city street, this Court sustained a judgment non obstante veredicto. Chief Justice STERN, delivering the opinion of the Court, said (page 19) : ". . . although the accident may have been a rear-end collision there is not applicable to that type of accident the familiar rule invoked by plaintiffs that when the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care."

If the exclusive control doctrine is given its literal meaning, this recent decision of our Court—as well as a myriad of cases involving injuries arising from an automobile—must be reversed, because the thing which caused the injury, i.e., defendant's automobile,

was shown to be under the management of the defendant and the accident was such as in the ordinary course of things does not happen, i.e., an automobile running into the rear of a bicycle, if defendant, who had the management, used proper care. Not only did defendant run his car into the rear of a bicycle, but the boy riding it was killed and therefore is presumed to have exercised due care. If ever the exclusive control doctrine should apply to this field of negligence, i.e., where an injury results from the operation of an automobile, it would seem to be the *Ebersole* case; yet, as we have seen, this Court held—and wisely held —the doctrine was inapplicable.

Why it should make any difference legally or in principle if the injured person was a passenger in an automobile which was driven by defendant instead of a passenger in another car which was struck by defendant, is difficult, on analysis, to discern. In other words, why should the general principles of negligence be abrogated in such a situation, especially as it is evident that a passenger in defendant's car would frequently be in a better position to prove defendant's negligence than a pedestrian, or the driver or occupant of another car, or a bicyclist who was hit in the rear? It is difficult, if not impossible, to give a logical or persuasive answer to that important question.

This Court has also frequently held that the exclusive control doctrine does not apply where an automobile strikes a *pedestrian* within the lines of a highway. In the recent case of *Martin v. Marateck*, 345 Pa. 103, 27 A. 2d 42, this Court once again held that the plaintiff-pedestrian must prove facts and circumstances sufficient to establish that defendant was negligent and that his negligence was the proximate cause of the accident. Yet, if the exclusive control doctrine were to be applied literally, all plaintiff would have to do

would be to prove that defendant's automobile struck him in broad daylight when he was crossing a highway at a street crossing, because the automobile was under the management of the defendant and the accident would ordinarily not happen if defendant exercised due care. The Court, after reviewing a number of cases which held that the mere fact that decedent, a pedestrian, was struck by a vehicle on a public highway was not sufficient to support a finding of negligence, distinguished *Knox v. Simmerman*, 301 Pa., supra, because in that case "the driver, approaching a curve, on a clear day, on a broad dry pavement, failed to make the turn and the car dashed into a pile of stones outside the paved portion of the highway." The Court said (page 109) : "Here the evidence discloses no such extraordinary circumstances, but shows merely the happening of a collision between a motor vehicle and a pedestrian, within the lines of the highway, *and the so-called doctrine of 'exclusive control' cannot, therefore, possibly apply.* See Logan v. Bethlehem City, [324 Pa. 7] . . . 13."

The doctrine of exclusive control has been specifically rejected and held inapplicable in *Ebersole v. Beistline,* 368 Pa.; *Logan v. Bethlehem City,* 324 Pa.; *Martin v. Marateck,* 345 Pa.; *Riley v. Wooden,* 310 Pa.; *Lanning v. Pittsburg Railways Co.,* 229 Pa.; *Miller v. Hickey,* 368 Pa.; *Rockey v. Ernest,* 367 Pa.; *Dickey v. Boggs & Buhl, Inc.,* 345 Pa.; and *Anderson v. Murdock,* 371 Pa.—all supra.

The confusion that has permeated numerous automobile accident cases by the application of or a reference to the so-called exclusive control doctrine clearly appears in *Schulz v. Reading Transportation Company,* 354 Pa. 373, 47 A. 2d 213. In that case a passenger, for hire, was wisely permitted to recover when

he proved that the bus in which he was riding suddenly skidded on a sharp curve; that the road was very slippery, icy and sleety, there were no chains on the tires and the defendant was late on his trip. The Court held that these facts warranted an inference of excessive speed or reckless driving under the circumstances and justified a verdict in favor of the plaintiff. After discussing numerous skidding cases, the Court quoted the second sentence in the exclusive control doctrine laid down in Shearman and Redfield on Negligence, §§59 and 60; and then added the following:

"Shearman & Redfield on Negligence, *Revised Edition* (1941), Vol. I, Sec. 56, p. 152, makes this statement: 'It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases *the surrounding circumstances* which are necessarily brought into view by showing how the accident occurred *contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it.* The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer. [Citing cases]. It is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim and the inference of negligence. *If a passenger in a car is injured by striking the seat in front of him, that of itself authorizes no inference of negligence . . . .*'" This quotation from the Revised Edition makes clear that these text writers never intended the literal interpretation and universal application of their text, which our Courts have sometimes carelessly and unwisely made in unnecessarily buttressing their opinions, where a plaintiff, as the opinion itself shows, had proved facts and circum-

stances sufficient (without the doctrine) to justify a jury in inferring negligence.*

While *Miller v. Hickey,* 368 Pa., supra, did not involve an injury from an automobile any more than *Shafer v. Lacock,* 168 Pa., supra, or *Durning v. Hyman,* 286 Pa., supra, did, it did involve a factual situation directly and literally within the exclusive control doctrine, if that rule were to be literally or universally applied. In holding that that doctrine was not applicable, we said, inter alia, (pages 331-332) : "Great care must be exercised to limit and restrict this so-called Rule or exception to cases (a) which are exceptional, and (b) where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant: Rockey v. Ernest, 367 Pa. 538, 80 A. 2d 783; Norris v. Philadelphia Electric Co., 334 Pa. 161, 5 A. 2d 114; Dickey v. Boggs & Buhl, Inc., 345 Pa. 453, 29 A. 2d 1. [Reiterated and reaffirmed in Loch v. Confair, 372 Pa. 212, 216, 93 A. 2d 451.] Were it otherwise and were the exception applied literally, it would nullify and destroy the long settled and well established principles of negligence. For example, where an automobile injures a passenger or pedestrian, or injuries result from a defect in a sidewalk, or from a defect in a highway or bridge owned by a township or county, the automobile or the house or the sidewalk or the bridge which caused the injury was under the management of the defendant and the accident would not happen in the ordinary course of things if those who had the management had used proper care, yet the exception or rule requiring a defendant to explain

---

* How carelessly the Court has, at times, reiterated and applied this doctrine is vividly illustrated by its frequent quotation of the doctrine from *Gawronski v. McAdoo,* 266 Pa. 449, 109 A. 763, where it is never quoted or even mentioned.

or to prove that he exercised due care certainly does not apply.

. . .

"On the other hand, where a jury may infer negligence on the part of the defendant from excessive speed or from driving on the wrong side of the road or from running off the road or from a trolley or railroad train jumping the track, it seems to us that the aforesaid exception is inapplicable and unnecessary and if the rule is quoted in an opinion in such a case it would not constitute an authority that this exception to the long and well established principle of negligence applies to all such cases."

In *Logan v. Bethlehem City*, 324 Pa., supra, this Court reversed a trial Judge who allowed a claim by a pedestrian to go to the jury under the exclusive control doctrine. Plaintiff sued for injuries resulting from being struck at a street crossing by a motorcycle operated by defendant's police officer, which was obviously under the management and exclusive control of the defendant. This Court in its opinion said, inter alia (page 11) : "The contention that a new trial should be granted rests upon certain alleged errors in the charge of the learned trial judge. Particularly is complaint made of the affirmance of plaintiff's fourth point for charge, which reads as follows: 'If the jury finds that the instrument causing the injury here complained of was under the management of the defendant or its agents, and the accident is such that under ordinary course of events would not happen if the operator of the motorcycle had used proper care, it affords reasonable evidence in the absence of satisfactory explanation by the defendant that the accident arose from the want of care.' " This Court then said: "In consequence of this instruction, the trial judge permitted the jury to presume negligence on the part of

the police officer operating the motorcycle, from the mere happening of the accident. *This was error. Negligence cannot be presumed on the part of defendant's employee even in the absence of a satisfactory explanation on his part as to how the accident occurred, or even in the absence of exculpatory evidence by him.* Negligence, or a failure to exercise due and proper care, must be affirmatively shown by plaintiff in order to sustain a verdict."

This is equally true where a guest passenger sues the driver of a car in which he was riding. To apply the exclusive control doctrine to such cases, thus giving a guest passenger a greater legal advantage than any other person who is injured by an automobile, not only nullifies and without any justification negates the long established principles of negligence, but is directly contrary and *diametrically opposite* to the modern trend throughout our country. For example, 29 states require by judicial decision or statute a guest passenger to prove willful or wanton misconduct or gross negligence or intentional misconduct or reckless disregard of the rights of others, in order to recover. See 60 C.J.S., §399(4), page 998, et seq.; Martindale-Hubbell Law Directory, Vol. 3 (1953).

I would therefore hold that the general principles of negligence apply and the exclusive control doctrine does not apply to a case where the driver of an automobile without any disclosed reason, justification of necessity, runs off a dry highway on a clear day or night. I would further hold that the exclusive control doctrine is applicable to cases where *all* of the following facts or elements are present: (a) where the thing which caused the accident is under the control of or was made or manufactured by the defendant, and the accident or injury would not ordinarily happen if the defendant exercised due care, or made or manufactured

the article with due care; and (b) where the evidence of the cause of the injury or accident is not equally available to both parties, but is peculiarly or exclusively accessible to and within the possession of the defendant; and (c) the accident itself is very unusual or exceptional; and (d) the general principles of negligence have not heretofore been applied to such facts. The reason for defining or laying down the doctrine in such broad language is because the Courts should have a leeway in particular cases or fields where, due to modern times and changing conditions, accidents will arise from causes and conditions which at the present time are not readily foreseeable. Examples of the proper application of the exclusive control doctrine would be, in my judgment, *Shafer v. Lacock, Hawthorn & Co.*, 168 Pa., and *Durning v. Hyman*, 286 Pa., supra; *Skeen v. Stanley*, 362 Pa. 174, 66 A. 2d 774; *Loch v. Confair*, 372 Pa., supra; *Dillon v. Scull Co.*, 164 Pa. Superior Ct. 365, 64 A. 2d 525; and the extreme case of *Commonwealth v. Montour Transport Co.*, 365 Pa. 72, 73 A. 2d 659.

I am aware of the fact that defendant was killed in the accident, and therefore a presumption arose that she exercised due care. However, that is a rebuttable presumption of fact and is overcome by and must always yield, if the facts and circumstances sufficiently disclose that defendant actually was negligent: *Griffith v. Weiner*, 373 Pa. 184, 95 A. 2d 517; *Grutski v. Kline*, 352 Pa. 401, 43 A. 2d 142; *Basel v. Pittsburgh*, 350 Pa. 545, 39 A. 2d 582; *Moore v. Esso Standard Oil Co.*, 364 Pa. 343, 72 A. 2d 117.

One other important question has been raised by appellant: Can a jury include in its verdict the reasonable cost or expense of a suitable tombstone—in this case $350.—under the Wrongful Death Act,* which

---

* Act of May 13, 1927, P. L. 992, §1; 12 PS 1604.

permits the recovery of "funeral expenses"? Public policy and the immemorial customs of our people, as well as analogous cases, favor its allowance.

In Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. I, page 574, the law is thus briefly but accurately stated: "GRAVESTONE . . . . 2. No direction by will; intestacy: A suitable tombstone over the grave of a decedent is a legitimate item of credit in the accounts of an executor or administrator: Porter's Est., 77 Pa. 43; Webb's Est., 165 Pa. 330; Fitzgerald's Est., 18 D. & C. 500; Lutton's Est., 17 Pa. Super. 342; Mitchell's Est., 79 Pa. Super. 208; Kreeger's Est., 277 Pa. 326; Miller's Est., 7 Berks 96"; to which I would add: See also Blackstone's Commentaries, Book II, pages 508, 511; 24 Corpus Juris 419; 23 Corpus Juris 1171.

Today a tombstone or suitable marker is almost universally regarded, for sentimental and religious reasons, as an important and necessary personal or family identification monument and as an integral part of the sacred ritual of burial. In deference to the deeply ingrained feelings and the immemorial customs of our people and in accordance with a wise public policy, I would hold that the reasonable cost or expense of a suitable tombstone or marker may be properly allowed as a part of "funeral expenses" under the Wrongful Death Act.

The judgment of the court below should be affirmed, but the doctrine of exclusive control should be rejected as inapplicable, and the decision placed squarely and solely under the principles of negligence.